## CHRISTIAN GINGRICH *et al.*

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. CONTINUANCE — *to give security in recognizance time to arrest and surrender his principal.* A party arrested upon a criminal charge, entered into a recognizance for his appearance at the December term, 1862, of the Circuit Court; not appearing at that time, the recognizance was taken for and declared forfeited. A *scire facias* was issued and served upon the securities, who appeared and pleaded at the April term, 1863, and the cause was continued for that term. At the August term, 1863, the securities applied for a continuance, upon affidavit of one of them, setting forth that on the first day of the then present month, having procured a certified copy of the record, a letter from Gov. Yates to the secretary of war, and a power of attorney from his co-sureties, he started to Washington city; that he was advised it was needless to have gone sooner on account of the rigid rules adopted after the battle of Gettysburg, which were still being adhered to; that affiant went to Washington and applied to the secretary of war, who refused to give an order on Col. Hecker or any other authority, for the surrender of the principal, who was a private in Col. Hecker's regiment in the army of the Potomac,

Gingrich et al. *v.* The People.

in which he had enlisted after his release on the recognizance; that affiant then made application to the provost marshal, who alone was authorized to grant passes to the army of the Potomac; that he refused a pass to cross the lines of the army for any purpose, and was obliged to return; that affiant used every diligence to procure the arrest of the principal, who was being held under military rules and discipline so that he could not be arrested; that affiant had been at great cost, and believed if the cause was continued he could be arrested and surrendered.

*Held,* that the securities used reasonable diligence to arrest and surrender their principal, and that under the peculiar circumstances of the case and the condition of the country, a continuance should have been granted, and the fullest time allowed them to produce him.

2. SURETIES ON RECOGNIZANCE — *Of a defense in bar — ground of continuance — enlistment of the principal in the army.* The sureties pleaded to the *scire facias* that their principal, after his discharge on bail, and before the term of the court at which he was recognized to appear, without their knowledge or consent enlisted as a private in the military service of the United States, and as such was ordered into the State of Virginia, where he still remained, under military authority, not at liberty to surrender himself, nor could his sureties arrest and surrender him in satisfaction of his recognizance, and that they could not procure his custody by *habeas corpus* or otherwise. The court were inclined to think this did not present a good defense, but grounds for a continuance merely.

3. SAME — *sickness of principal.* The sureties also pleaded that, at the time of the taking of the forfeiture of the recognizance, and for a long time previous, the principal was, and at all times since had been, in the State of Virginia; was sick and disabled, insomuch that he could not be removed nor brought and surrendered to the court or any officer by his sureties, without great danger of the loss of his life. This was regarded, not as a good defense, but as presenting only grounds for a continuance.

4. A MODEL SCIRE FACIAS. The *scire facias* in this case is regarded as faultless.

APPEAL from the Circuit Court of Woodford county; the Hon. SAMUEL L. RICHMOND, Judge, presiding.

This was a proceeding by *scire facias* upon a forfeited recognizance. The writ of *scire facias* was as follows:

"STATE OF ILLINOIS, } ss.
    WOODFORD COUNTY, }

*The People of the State of Illinois, to the Sheriff of said county, greeting:*

Whereas, heretofore, to wit, on the second day of September, A. D. 1862, one Christian Gingrich was brought before Adino Page, Esq., one of the justices of the peace in and for

29 — 34TH ILL.

said county of Woodford, and examined upon a charge of committing an assault with a sharp knife upon one Elizabeth Gingrich; and the said justice having inquired into the truth or probability of said charge, by the oath of all the witnesses attending, did order and require that said Christian Gingrich give bail, with good and sufficient security, in the sum of eight hundred dollars, for his appearance at the next term of the Circuit Court of said county of Woodford, on the first day of the term, to answer the said charge, and to do and receive what might be then and there enjoined upon him by the said court, and not depart the said court without leave.

Whereupon, on the said second day of September, A. D. 1862, the said Christian Gingrich, as principal, and Charles Schneider, Jacob Gingrich, John Lutz and Frederick Donner, as sureties, personally came before said Adino Page, Esq., one of the justices of the peace in and for the county of Woodford aforesaid, and then and there, by their recognizance, in writing, by them duly signed and sealed, jointly and severally acknowledged themselves to owe and be indebted unto the people of the State of Illinois, the sum of eight hundred dollars, to be levied of their respective lands and tenements, goods and chattels; yet upon the condition, that if the said Christian Gingrich should personally be and appear before the Circuit Court of the county aforesaid, on the first day of the then next term thereof, and from day to day thereafter, until discharged by order of the said court, then and there to answer to the said people on the said charge, abide the order and judgment of the said court, and not depart the same without leave, then the said recognizance should become void, otherwise, should remain in full force; which said recognizance was then and there taken and approved by the said justice, and afterwards, to wit, on the fourth day of September, A. D. 1862, by him filed in the office of the clerk of the said Circuit Court and became a matter of record therein, as by the record of the said recognizance still remaining in the said court will appear. And whereas, afterwards, to wit, at the December term of the said Circuit Court, A. D. 1862, the grand jurors for

the county aforesaid, preferred against the said Christian Gingrich and returned into the said court, on the ninth day of the said month of December, a certain bill of indictment, wherein it was presented, that the said Christian Gingrich, on the first day of September in the year aforesaid, at the county aforesaid, with a certain knife made of steel, iron and horn, which he, the said Christian Gingrich, in his right hand then and there had and held (the blade of the said knife then and there being of the length of three inches and of the width of half an inch), in and upon one Elizabeth Gingrich, did make an assault with an intent her, the said Elizabeth Gingrich, then and there, feloniously, wilfully and of malice aforethought, to kill and murder; which said assault in the said indictment charged, is the same assault in the said recognizance mentioned.

And whereas, afterwards, to wit, at the said December term of the said Woodford county Circuit Court, A. D. 1862, the same being the first term of said court next succeeding the date of the aforesaid recognizance, and the said court being then judicially sitting, the said Christian Gingrich was three times solemnly called, yet he came not, but made default; and the said Charles Scheider, Jacob Gingrich, John Lutz and Frederick Donner were each likewise three times solemnly called to bring into court the body of the said Christian Gingrich, yet they came not, but likewise made default, and failed to bring into court the body of the said Christian Gingrich:

Whereupon, it was considered and adjudged by the said court that the said recognizance be taken for and declared forfeited, and that a *scire facias* issue against the said Christian Gingrich, Charles Schneider, Jacob Gingrich, John Lutz and Frederick Donner: These are, therefore, to command you that you make known to the said Christian Gingrich, Charles Schneider, Jacob Gingrich, John Lutz and Frederick Donner that they and each of them personally be and appear before our Circuit Court to be holden in and for the county aforesaid at Metamora on the second Monday of April, A. D. 1863, then and there to show cause, if any they may or can have, why execution should

not issue against them upon their aforesaid recognizance, according to the form, force and effect thereof, and of the forfeiture aforesaid; and have you then there this writ, with a return of your doings thereon.

Witness, James D. Perry, clerk of our said court, and the [SEAL.] seal thereof, at Metamora, this eighteenth day of February, A. D. 1863.

JAMES D. PERRY, *Clerk.*"

This writ was returned served upon Jacob Gingrich and Frederick Donner.

· A writ of the same purport was issued to Peoria county, which was returned served upon the other two sureties, Schneider and Lutz.

All the securities appeared and pleaded, and the cause was continued at the April term, 1863.

Alias *scire facias* was on the 1st day of July, 1863, issued to Christian Gingrich, returnable to the August term, 1863, which was also returned not served.

The securities pleaded to the *scire facias:* 1. *Nul tiel* record. 2. That there was no such recognizance as described. 3. That Adino Page was not a justice of the peace. 4. Death of principal in Virginia. Issues were joined on all the above pleas.

The securities further pleaded, in the fifth plea, that on the 8th of September, 1862, the principal, without the knowledge or consent of themselves, enlisted in the military service of the United States, at the county of Woodford, in company E, of the 85th regiment, of Illinois volunteers, for the term of three years, and that now, and at all times since the 8th of September, 1862, and still is, a private in said regiment, and that the company and regiment were by proper military authority ordered into the State of Virginia, and on the 5th day of October, 1862, departed into the State of Virginia, where they still remain; that the principal has at all times been a member of, and with the regiment, and under the control and command of the proper officers, and without the jurisdiction of the State at the time of the forfeiture, and all times since, and

in the State of Virginia, under military law, authority and rule, and not at any time at liberty to surrender himself, nor could his securities arrest, deliver or surrender him in satisfaction of his recognizance, and that they could not obtain or procure his custody or control by *habeas corpus* or otherwise.

The 6th plea alleges that at the time of the taking of the forfeiture, the principal was, and for a long time previous, and at all times since, in the State of Virginia; was sick and disabled, insomuch, that he could not be removed nor brought and surrendered to the court or any officer by his securities, without great danger of the loss of his life.

A general demurrer was filed to the 5th and 6th pleas and sustained by the court, and defendants abided by their pleas and excepted.

Affidavit of the attorney was filed for a continuance and delay of the cause, setting forth the diligence that had been, and was then being made for the arrest and surrender of the principal, and that one of the securities with a certified copy of the recognizance, indictment and certificate, stating when the court would be held, and a power of attorney duly signed and sealed by his co-securities, and also with a letter from Hon. Richard Yates to Secretary Stanton, was then absent to procure the arrest of the principal, who was a private in Col. Hecker's regiment in the Potomac army.

On the return of the security he filed, August 14, 1863, also, an affidavit for continuance, setting forth that on the last day of July or first of August, having procured certified copies of record, as above stated, a letter from Governor Yates to Secretary Stanton and power of attorney, he started to Washington city; that he was advised that it was needless to have gone sooner on account of the rigid rules adopted after the battle of Gettysburg, and were still being adhered to; that affiant went to Washington and made application to Secretary Stanton; that Stanton refused to give an order on Colonel Hecker or any other authority, for the surrender of the principal, and said he had no time to attend to such unimportant business; that he then made application to the provost marshal, who

was alone authorized to grant passes to the army of the Potomac; that he was refused a pass to cross the lines of the army; that he could not get within the lines of the army for any purpose, and was obliged to return; that he used every diligence to procure the arrest of the principal who is held under military rules and discipline so that he could not be arrested; that affiant had been at great cost, and believed if the cause was continued he could be arrested and surrendered, and that the application was not made for delay. The court overruled the motion and a jury was impanneled to try the cause, and the defendants were *compelled to go to trial.*

A verdict was returned against the defendants, who moved for a new trial which was denied; a motion in arrest of judgment was then entered, it being insisted among other things, that the *scire facias* was void, and did not show the people entitled to execution. This motion was also overruled, and the defendants excepted. Thereupon the court entered a judgment upon the verdict. The defendants bring the cause to this court by appeal, and assign for error. *First,* the sustaining the demurrers to the fifth and sixth pleas; *second,* the overruling of their motion for a continuance; and *third,* overruling the motion in arrest of judgment.

Mr. M. WILLIAMSON for the appellants:

1st. The court erred in sustaining the demurrer to the 5th and 6th pleas.

The 5th plea shows that the principal was in the military service of the United States, and in duress under lawful rules, regulations and discipline, that rendered it impossible for him to surrender himself or for the securities to arrest or obtain him by *habeas corpus* or otherwise, to be surrendered in discharge of the recognizance. When the principal is lawfully restrained of his liberty, and it is out of the power of his securities to surrender him, and that without the fault of the principal or security, and the object of the law being not to enforce the forfeiture, but to compel the surrender of the principal by his bail,

in whose custody the law presumes him to be, it shows good reason why execution should not issue.

The appearance bail are released by conviction and imprisonment of the principal for felony. 3 Har. 333.

It is a good defense that the principal was afterwards convicted of crime. 5 Metc. 380.

This is upon the principle that it is out of the power of the bail to surrender him for trial, which is the whole object of the law. And there is no reason why the same principle should not apply when it is out of the power of the bail to surrender the principal by reason of his being under military regulation, whereby it is also utterly impossible to surrender him. There is no law protecting crime that relieves men from forfeiture for a criminal offense and holds them liable to pay the same penalty when fighting the battles of their common country.

2d. The sixth plea shows that the principal was so dangerously sick that he could not be surrendered without danger of the loss of his life. The law does not require the principal to be surrendered if such was the case, and which is admitted by the demurrer. 4 Humph. 226.

3d. The court erred in overruling the motion for a continuance. The affidavits show the principal to be detained by lawful authority, that authority which every government must necessarily have over the lives and persons of its citizens, and in times, and under circumstances of extraordinary peril, to the very existence of the government, and that for these reasons he was refused by proper authorities to be surrendered, and that extraordinary diligence had been used at great cost to the securities to effect his surrender.

In cases of this kind, the courts have unlimited authority, and can, and it is their duty to give long time for the surrender of the principal where honest effort is made to procure his surrender. They may do so even until the money is paid. 6 La. An. 260 ; 10 Mod. 278.

The object is to procure his surrender and trial, and not to enforce the forfeiture. 6 id. 260 ; 1 Brock. 256.

5th. The court should have allowed the motion of the

defendants to continue the cause and to enter into further recognizance for his appearance to answer the charge, it being impossible from circumstances beyond their control to surrender the principal, or for him to surrender himself. *People* v. *Slayton*, Breese, New E. 330.

Mr. D. P. Jones, State's attorney, for the people.

A default in the condition of a recognizance is not excused where the performance of the condition has not been rendered impossible by the act of God, or the law, or of the obligee. Bac. Abr., Tit. Cond. 2.

It does not appear from the pleas that a surrender was impossible, or that the disability existed at the time of filing the plea.

The proper remedy in the cases stated in the pleas was a motion for a continuance of the recognizance, addressed to the favor of the court. *Commonwealth* v. *Craig*, 6 Rand. 731; *Cheatham* v. *Lewis*, 2 Johns. 104; *State* v. *Hamill*, 6 La. An. 260.

Where the principal is dead, the sole object of the recognizance — the securing of his appearance for trial — is defeated. In this case it is different. If the principal was disabled, the recognizance should have been continued, to secure his attendance at a succeeding term, should the disability be removed.

The affidavits for a continuance were insufficient. The principal voluntarily placed himself beyond his own or his securities' control. The latter undertook to prevent this, and secure the attendance of the principal, and the law gave them ample power to do so.

The granting of a continuance was in the discretion of the court.

Mr. Justice Breese delivered the opinion of the Court:

Under the peculiar circumstances of this case and the condition of the country, the cause should have been continued on the affidavits on behalf of the defendants. It seems from them,

they did all that could be expected of them, to take and surrender the principal to answer the indictment. He had enlisted in the army without the knowledge or consent of his sureties, and they had used reasonable diligence to arrest and surrender him. They seem to have acted in good faith in their efforts to take him.

We are inclined to think the fifth and sixth pleas presented no good defense, but show ground for a continuance merely. Under such facts it would be unjust to condemn the defendants, without giving them the fullest time to produce their principal.

The *scire facias* is wholly unobjectionable, and might be well referred to as a model in like cases.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*