Taintor *v.* Taylor.

# SUPREME COURT OF ERRORS.

## FAIRFIELD COUNTY.

### OCTOBER TERM, 1869.

### Present,

HINMAN, C. J., BUTLER, PARK, AND CARPENTER, JS.

HENRY G. TAINTOR, STATE TREASURER, *vs.* WILLIAM F. TAY-
LOR AND OTHERS.

A person charged with a crime before the Superior Court was committed to the
custody of the sheriff on his failure to give the bond required by the court, and
during the term of the court no formal order was given to the clerk for his
commitment to jail, but after the court adjourned the clerk issued a mittimus
for such commitment, on which he was held in custody when he gave bond for
his appearance at the next term of the court. Held—1. That the clerk had
power to issue such mittimus. 2. That consequently the bond was not void
as obtained by duress.

It is not the practice of the Superior Court to issue a special order to the clerk
for the commitment of a prisoner to jail. There is a general continuing order
to that effect which the clerk may act upon either during the term or after its
close, the mittimus being in the nature of an execution carrying into effect the
judgment of the court.

A prisoner gave bond with sureties for his appearance at the next term of the
court, and before such next term was arrested in the state of New York upon
a governor's requisition from the state of Maine, for a crime previously com-
mitted in the latter state, and was taken to that state and there imprisoned,
and was actually in prison there at the time his appearance was demanded in
court in this state. A motion for a continuance of his case was made by his
counsel and denied, and his bond was called and forfeited. Held that the facts
constituted no defense to a suit on the bond.

DEBT on a recognizance entered into by the defendants for
the appearance of one McGuire, who was in custody on a
charge of theft, before the Superior Court next thereafter to
be holden in Fairfield County. The present suit was brought
to the Superior Court in that county. The defendants were

McGuire, the principal in the recognizance, and William F. Taylor and Barnabas Allen, sureties. No service was made on McGuire, who was out of the state. The defendants pleaded a general denial, with notice of certain facts that appear in the finding of the court. The issue was closed to the court, and the following facts found by the court.

McGuire, who had been brought from the state of New York on a requisition of the governor of this state, was put on trial at the August term, 1866, of the Superior court in Fairfield County, and the jury failed to agree. Afterwards, on the sixteenth day of the term, which was the 11th of September, the court ordered bail to be given, and fixed the amount thereof at $8000. Afterwards, and before the final adjournment of the court, the state's attorney, considering the jail at Danbury insecure, made a motion to the court for an order removing McGuire and other prisoners from the jail at Danbury to the jail at Bridgeport, but the court declined to make the order on the ground that it had no right to do so, and the judge added that McGuire and the other prisoners were in custody and under the charge of the sheriff. No mittimus for holding McGuire in custody was issued during the term. The court adjourned without day on the 20th of September. On the 22d of September, and before the commencement of any other term of the Superior Court in Fairfield County, the sheriff finding there was no mittimus to hold McGuire in custody, procured one from the clerk of the court, directing him to hold in custody not only McGuire, but several other prisoners then in custody; and shortly thereafter, on the 24th of September, the defendants entered into the recognizance upon which the present suit was brought. McGuire, after the failure of the jury to agree in his case, remained in the custody of the sheriff until the 24th of September, when he was released from custody upon the bail being given. After the receipt of the mittimus the sheriff did not formally arrest him, or inform him of its existence. On the 6th day of the October term, 1866, of the Superior Court for Fairfield County, being the 23d of October, the bail bond was called and forfeited. On the same day and

previously thereto, one of the defendants, William F. Taylor, acting as counsel for McGuire, and for himself and his co-surety as bondsmen, made a motion for the continuance of the case, for the reason .that McGuire had been taken to the state of Maine on a requisition from the governor of that state, which motion was refused by the court, and the bail bond immediately called and forfeited.

McGuire belonged to the state of New York, and while in that state in the month of October, 1866, and before the day when the bail bond was called and forfeited, was arrested by the officers of that state, upon the mandate of the governor of the state of Maine, and against his will forcibly taken to the state of Maine ; the requisition setting forth a charge of burglary committed in the state of Maine before the giving of the present bail bond. And he was, at the time of the calling of the bond in the Superior Court, legally imprisoned in the state of Maine, on the charge of burglary, awaiting his trial. In 1867, having remained in prison till then, he was tried and found guilty, and sentenced to the state's prison of the state for the term of fifteen years, upon which sentence he was still imprisoned at the time of the trial of the present case. Neither of the defendants, Taylor and Allen, knew at the time of the recognizance that there was any other charge of crime against McGuire than the one then pending against him in this state.

The plaintiff offered testimony to prove, and if such testi-mony was admissible did prove, that the sum of $8000 was placed in the hands of Taylor and Allen to indemnify them for giving the bail bond. To this testimony the defendants objected, but claimed, if it was admissible, the right to prove, and did prove, that it was not placed in their hands by McGuire or in his presence, or by any agent of his on his behalf, and that, so far as they knew, it was done without the knowledge of McGuire.

Upon these facts the case was reserved for the advice of this court.

*Beardsley,* and *White,* State's Attorney, for the plaintiff.

1. McGuire was lawfully in custody when the bond was given, and it therefore was not void as given under duress. No mittimus was necessary, but if necessary the one issued was lawfully issued. The prisoner was held under the order of the court, and the clerk could at any time issue the mittimus to carry that order into effect.

2. The fact that McGuire was imprisoned in the state of Maine and could not appear when called, is no defense to a suit on the bond. The principal and sureties in such a bond bind themselves that the principal shall appear at the time named therein, without any reservation or condition, and by the exact terms of the bond the sureties are bound to have the principal present in court on pain of forfeiture. But to this the law has made some exceptions: 1st. The act of God, as when the principal dies before the forfeiture accrues. *Parker* v. *Chandler,* 8 Mass., 264. 2d. The act of the law. 3d. The act of the obligee. The defendants in this case do not fall within either of the exceptions. There is no pretence that they come within the first exception. They do not come under the second exception, because the "act of the law" does not mean the law of a foreign state. The legal proceeding constituting the "act of the law" must also have been procured in some way by the obligee of the bond, making it strictly his act as well as the act of the law. This was the case in *Way* v. *Wright,* 5 Met., 380, which was an action of *scire facias* against bail. The plaintiff had caused a complaint to be issued for perjury against one Draper, for whom the defendants had become bail in the original action, and on this complaint Draper was committed, the obligee having thus by his own act prevented the sureties from surrendering their principal. The true rule is given by the Supreme Court of the state of New York, in the case of *The People* v. *Bartlett,* 3 Hill, 570, wherein Nelson, C. J., quotes approvingly an old opinion from Chief Justice Brian, as follows: "There is a diversity where a condition becomes impossible by the act of God, as death, and where by a third person or stranger, and where by the act of the obligor, and where by the obligee. The first and

last are sufficient excuses for non-performance, but the second is not, for in such case the obligor has undertaken that he can rule and govern the stranger, and in the third case it is his own act." In that case the obligee (the state of New York,) had rendered the performance impossible. In this case the performance is prevented by the state of Maine, a stranger, not in any way a party to the recognizance. *Ingram* v. *The State*, 27 Ala., 17 ; *Devine* v. *The State*, 5 Sneed, 623 ; *United States* v. *French*, 1 Gal., 1 ; Comyn Dig., " Condition," L, 6, 12, 13.

3. But it is claimed, inasmuch as McGuire, after he was released from custody, went to New York, and was, while there, surrendered by the governor of the state of New York, upon the requisition of the governor of the state of Maine, to that state, where he was tried and convicted of a crime, and imprisoned, so that it was impossible to perform the condition of the bond, that the bond is discharged. It is said that the state of Maine had a constitutional right to make the requisition, and that the state of New York was by the constitution bound to obey it. U. S. Constitution, Art. 4, sec. 2. This clause in the constitution is not obligatory on the states. Cooley's Const. Limitations, 16, note ; *Matter of Clark*, 9 Wend., 221 ; *Kentucky* v. *Dennison*, 24 How., 66. But these facts can have no greater effect than if, after the recognizance had been given, and his sureties permitted their principal to escape beyond their power and the jurisdiction of this state, he had been tried, convicted and imprisoned for felony in the state of New York. If he had remained in this state, where the bond required he should be, the obligation of the constitution would not have required his surrender. Connecticut had a prior claim by virtue of a prior criminal process commenced and executed according to her laws, and that clause of the constitution would have been entirely inoperative as against this state. But the fault was with the defendants, and particularly with the sureties. They should have prevented their principal from leaving this state, and having voluntarily permitted him to do it, by his depositing or causing to be deposited the amount of the penalty of the bond in

their hands, they cannot now be permitted to deprive the
state of the penalty incurred by their own acts. The question
is a new one in our courts, and both justice and equity require
that exemptions shall not be extended. If the defendants
can succeed in defeating the just claim of the state in this
instance, with the facts as found in this case, an adept may
commit felonies in thirty-five states of this Union, giving
bail in each, and in the thirty-sixth suffer himself to be con-
victed of a small offense, and both principal and sureties
escape from all liability in the thirty-five states where the
greater crimes may have been committed.

4. Evidence to show that the sureties had been indemni-
fied was admissible. *Bank of Geneva* v. *Reynolds*, 12 Abbott
Pr. R., 81; *S. C.*, 20 How. Pr. R., 18.

*Sanford* and *Brewster*, with whom was *Taylor*, for the de-
fendants.

1. The bond was void because the principal was held with-
out legal authority. Gen. Statutes, p. 282, sec. 216; *Ferry*
v. *Burchard*, 21 Conn., 597; 1 Burn's Justice, 153; id., 381,
386; *Calf* v. *Nevil*, Popham, 185; *Hargrave* v. *Rogers*, Cro.
Jac., 45; *S. C.*, Yelv., 52; *S. C.*, Cro. Jac., 98; *Palmer* v.
*Allen*, 5 Day, 193; *Darling* v. *Hubbell*, 9 Conn., 350, 355.
The clerk had no power to issue a mittimus after the adjourn-
ment of court. *State* v. *Jones*, 8 Maryl., 88.

2. The bond was discharged by act of the law. In all
cases where the condition of a bond is possible at the time
of the making of the condition, and before the same can be
performed the condition becomes impossible by the act of
God, or of the law, or of the obligee, then the obligation is
saved. *Parsons* v. *Williams*, 9 Conn., 240; Co. Litt., 206 a;
Powell on Cont., 265; 2 Bla. Com., 341; Theobald on Sure-
ties, § 223; *Fuller* v. *Davis*, 1 Gray, 612; Chitty on Cont.,
635; *Way* v. *Wright*, 5 Met., 380. The case of *Hall* v.
*Stearns*, Brayt., 35, decided in Vermont in 1816, is an exact
precedent. It is there held that " bail is excused for not sur-
rendering his principal where the principal is confined in the
state prison of another state previous to the bail's becoming

fixed, i. e. before the return of *non est inventus* on the execution." So also is *Loflin* v. *Fowler*, 18 Johns., 335, approved in *Phœnix Fire Ins. Co.* v. *Mowatt*, 6 Cowen, 599. Where surrender is impossible or useless by act of the law, the practice, where there is no statute on the subject, is to defend on the bond or recognizance, without previous motion to discharge or motion for an *exoneretur*. *McFarland* v. *Wilbur*, 35 Verm., 342; *People* v. *Manning*, 8 Cowen, 297; *Beers* v. *Haughton*, 9 Peters, 329. Among the numerous cases in which the act of the law or of the government rendering the surrender of the principal impossible, has been held to discharge the bail, are these: (1.) Imprisonment in the same state. *Way* v. *Wright*, 5 Metc., 380; *Cathcart* v. *Cannon*, 1 Johns. Cas., 28; *People* v. *Bartlett*, 3 Hill, 570. (2.) Confinement in insane asylum. *Fuller* v. *Davis*, 1 Gray, 612; *Hazard* v. *Hazard*, 1 Paine, 295. (3.) Rendition on requisition of a governor of another state. *State* v. *Allen*, 2 Humph., 258; *State* v. *Adams*, 3 Head, 260. (4.) Transportation out of the kingdom. *Postel* v. *Williams*, 7 T. R., 517; Bac. Abr. " Civil Bail " D; *Canby* v. *Griffin*, 3 Harr., 333. (5.) Retention in the army. *People* v. *Cushney*, 44 Barb., 118. McGuire was a fugitive within the meaning of the law. *U. States* v. *Smith*, 4 Day, 125. He could not be re-taken in Maine, nor refused to be delivered up on the requisition in Connecticut or New York when simply out on bail. *Matter of Troutman*, 4 Zabr., 634. The general rule is stated thus in 1 Tidd's Prac., 293: " Whenever by act of the law a total impossibility or temporary impractibility to render a defendant has been occasioned, the court will relieve the bail from the unforeseen consequences of having become bound for a party whose condition has been so changed by operation of law as to put it out of their power to perform the alternative of their obligation without any default, laches or possible collusion on their part." The passage in Tidd is taken from the note to *Ashmore* v. *Fletcher*, 13 Price, 524, (1824.) This note gives the English practice up to that time concerning discharge of bail, and on page 530 states that the courts will relieve bail when the render of the principal is impossible or

impracticable by operation of law, although refusing to do so in similar instances where the impossibility is occasioned by the act of God, or the king's enemies. This is on the ground that the principal is already in the hands of the law, and surrender can effect nothing more. The same note (530th page) adds that in such cases " the court will relieve bail even although the act of the law against which they have relieved them has been owing in many cases to the voluntary criminal act of the principal, or it has even been to his advantage and benefit." The law supposes the principal to be always in the custody of his bail, and if he is not in fact, the bail may take him when and where he pleases. *Read* v. *Case*, 4 Conn., 171; *Nicolls* v. *Ingersoll*, 7 Johns., 146. It was needless to attempt to re-take McGuire in Maine, or after rendition by the governor of New York, and the law subjects no man for damages for not doing an act perfectly nugatory. *Newell* v. *Hoadley*, 8 Conn., 381. By the " act of the law" or " the government" is meant the " law of the land," the " general public law operating equally upon every member of the community." 2 Burrill Law Dic., "Law of the Land;" Const. of U. States, Art. 6, § 2; Sedgwick on Const. Law, 534; 1 Austin on Jurisprudence, 316. But the clause of the United States Constitution concerning fugitives from justice, by force of which McGuire was taken out of our power, " is part of the whole law prevailing in any one state; is a supreme law in each state; is a positive law; is a law in the strict sense acting *on all private persons within the United States*.' 1 Hurd on Law of Freedom and Bondage, §§ 360, 365; 2 id., § 794; 1 Kent Com., 449; 1 Austin on Jurisprudence, 316. In regard to the rendition of fugitives the states are not foreign to each other. Walker's American Law, " Fugitives." The rendition " has all the elements of a judgment under punitive law." 2 Hurd on Freedom and Bondage, § 860. And each state is bound to give full faith and credit to such quasi judgment or sovereign political act consummated between any two states under the general constitution of all. *Matter of Clark*, 9 Wend., 218. The delivery of fugitives from justice by one state to another, is not

---

by virtue of inter-national comity, but is part of the integral law of the land, by which the criminal laws of the states are connected and the whole act made a proceeding under the general law of the land. U. S. Const., 2d clause, 6th art. ; Articles of Confederation, 4th art. ; Dana's Wheaton's Int. Law, § 115 ; Lawrence's Wheaton's Int. Law, 223 ; 1 Phillimore's Int. Law, 411 ; Gardner's Inst. of Am. Law, 156, 159 ; 2 Opinions of Attorneys General, 452 to 559 ; 6 id., 85, 227, 431 ; *Matter of Clark*, 9 Wend., 218 ; 1 Bishop Crim. Law., § 123.

3. The surrender of the principal was prevented by the act · of the obligee, as well'as by the act of the law. The bond to the treasurer of the state was a bond to the people of the state. *Barkhamsted* v. *Parsons*, 3 Conn., 1 ; *U. States* v. *Hall*, 6 Cranch, 171 ; *Smith* v. *State of Maryland*, id., 286. Forms of indictment in many of the states are framed in the name of " the people of the state." The " sovereign act of the nation," by whose constitutional provisions alone rendition from state to state is effected, must be either (1) the act of all its people as a unit, or (2) of the several peoples forming the several states which compose the "nation." Jameson . (Const. Convention, 54, 57,) holds the first view. Austin on Jurisprudence holds the second view, (vol. 1, page 222.) The theories of Hurd, Cooley, Brownson, Parker and other recent publicists, substantially merge into the one or the other of the two just cited. We submit that in either case the people of Connecticut (1) as individual citizens of the nation, or (2) as discriminated and grouped into a state, are parties to the surrender of McGuire to the state of Maine ; an act done by the authority of their own national constitution, for the performance of which the whole power of every state is pledged. 2 Hurd on Freedom & Bondage, § 793. Retention in the army of the United States was held to be the act of the state of New York, in *People* v. *Cushney*, 44 Barb., 118. As to agency, see *Barkhamsted* v. *Parsons*, 3 Conn., 8, and *The People* v. *Bartlett*, 3 Hill, 570. As to the *political* sovereign character of rendition, see 7 Opinions of Attorneys Gen., 6. That the amount of the bond was placed by another

person (not the principal or an agent of his,) in the hands of the nominal sureties in this state, cannot affect the right of the plaintiff to recover. That third party is the real surety, equally innocent, and equally unable to perform an impossibility. *Brownelow* v. *Forbes*, 2 Johns., 101 ; *Sharp* v. *Sheriff*, 7 T. R., 226. There was no greater risk of rendition in New York than in Connecticut. *Matter of Troutman*, 4 Zabr., 634.

PARK, J. The defendants claim that the bond in question was void because the principal therein was held without legal authority when it was given, and gave the bond to liberate himself from unlawful imprisonment.

It appears that McGuire, the principal in the bond, was brought before the Superior Court and tried for the crime of theft. The jury failed to agree on a verdict and the cause was continued to the next term of the court. McGuire was subsequently required to give bonds with surety, and was committed to the custody of the sheriff of the county because the order was not complied with. The bond was not given during the term of the court, and no formal order was given to the clerk for his commitment to jail. Soon after the court adjourned for the term the clerk issued a mittimus for his commitment to jail, and on that he was held in custody when the bond was given. The claim is that the clerk had no authority to issue the mittimus after the close of the term, and that therefore McGuire was unlawfully imprisoned when the bond was given.

It is never the practice of the Superior Court to issue an order to the clerk, in each particular case, for the commitment of a prisoner to jail. There is a general continuing order of the court to that effect, which the clerk may at all times during a term of the court act upon as occasion requires. The general order has the force of a special order in each particular case ; and therefore this case stands just as it would have stood if the clerk had been specially directed to issue a mittimus to commit McGuire to jail. The clerk omitted by mistake to comply with the order during the term of the court. But the clerk is merely the recording officer

of the court. The authority is vested in the court. McGuire then was in jail by order of the court, because he neglected to give the bond required by the court. It is true, up to the time that the mittimus issued McGuire might have been liberated on a writ of habeas corpus, because there was no legal evidence of the authority by which he was held; but when the mittimus issued the authority appeared. The mittimus was based upon the action of the court, and was in the nature of an execution to carry into effect the judgment of the court. The clerk could issue it after the term had expired as well as before, the only difference being that the retention of McGuire in jail became lawful when it issued, although such retention may not have been lawful before.

We think this claim of the defendants untenable.

In all criminal cases where a party accused of crime is liberated on bail, the principal and sureties bind themselves that the principal shall appear before the court at the time and place appointed and answer to the crime charged against him. The form of the recognizance is without reservation or condition, but the law excuses the sureties if they are prevented by the act of God, or by the act of the law, or by the act of the obligee, from fulfilling the requirements of the bond. It is not pretended in this case that the defendants are excused by the act of God, so that we are only to enquire whether they are excused by the act of the law or by the act of the obligee. The defendants claim that they are excused upon both of these grounds.

We will then consider, in the first place, whether they are excused by the act of the law.

It is not pretended that the law of this state interfered with the performance of the condition of the bond, but the claim is, that the law of the state of Maine, where McGuire was imprisoned, did, and rendered the condition of the bond impossible to be performed. But what has the state of Connecticut to do with the law of the state of Maine, any more than it has with the law of England, or France, or of the Sandwich Islands? It would not be claimed that if McGuire had escaped to either of these countries, and had been there im-

Taintor v. Taylor.

prisoned, that would be a sufficient excuse.  The states of this Union are foreign to each other in a matter like this.  So far as their local affairs are concerned they are as independent of each other as France is independent of England.  Their independence is limited only by the constitution and laws of the United States.  But McGuire was taken to Maine to answer for a crime committed against her local government; a matter that Maine has sovereign control over, to punish, or not, just as she pleases.  What is meant by the act of the law, is, the law of the state or country where the obligation is entered into.  There is reason why this should be an excuse, but there is no reason why the law of another state should be.  Suppose McGuire had gone to Maine in order that he might be arrested for some small offence that he had previously committed there.  If the defendants' claim is correct he had it in his power when the bond was given to exonerate his bail and escape all punishment perhaps for the heinous crime that he had committed in this state.  This would afford an easy way of escape in many cases.  The criminal even might have an understanding with his surety before a bond should be given, that he would take such means of escape, and the fact would be known only to themselves.

If it be said that the collusion in such cases would prevent any exoneration of the bail, it is manifest that the fact could never be proved except on the confession of one or the other of the parties, which would rarely if ever be made.  We should hesitate long before we should hold that the common law goes thus far to excuse bail, even if cases could be found where the doctrine contended for has been upheld.  But we think the weight of the decided cases is in accordance with the view we have taken of the phrase, "by the act of the law."  The defendants were in fault in suffering McGuire to escape from the state.  It was in their power to prevent his so doing and thus to prevent the consequences that have ensued.

The defendants further claim that they are excused *by the act of the obligee.*  The obligee in the bond of recognizance is the State of Connecticut.  The claim is that the constitution of the United States requires that fugitives from justice shall

be given up on a requisition by the executive of the state from whence the fugitive has fled on the executive of the state to which he has escaped. The executive of the state of Maine made a requisition on the executive of the state of New York for the surrender of McGuire. He was surrendered; and the claim is that the state of Connecticut, being a party to the constitution that required it to be done, made herself a party to the surrender. If McGuire had remained in this state he would not have been surrendered on a requisition made by the executive of Maine. It was more important to this state, and just as important to the country at large, that he should be punished for crime committed here, as that he should be taken to Maine and punished for crime committed there. The requirement of the constitution was never intended to apply to such a case. This is obvious; for if a party commits crime in two different states, and one of them has him in custody awaiting trial, it is absurd to say that the constitution requires that he should be surrendered to the other state on a requisition being made, for the state surrendering him would have an equal right to require that he be returned again.

If then this state would not have surrendered McGuire if called upon to do so by the executive of Maine, how can it be claimed that she participated in his surrender by the state of New York? Under the constitution Connecticut had as much right to McGuire to punish him for crime as the state of Maine. His escape to New York through the fault of his bail made her rights none the less, and those of the state of Maine none the greater. So long as the prosecution against McGuire remained in court Connecticut insisted upon her right to try him, by all the means in her power, and required the bail to produce him for the purpose. He might have been produced up to the time he was delivered to the authorities of Maine, for the bail had ample authority for the purpose. If they had gone to the state of New York, even after the requisition had been made upon the executive of that state, and demanded the right to remove McGuire to this state by virtue of their bond, no doubt the executive of that state

City of Bridgeport *v.* N. York & N. Haven R. R. Co.

would have surrendered him to the bail, instead of surrendering him to the authorities of Maine, for this state had a superior right to him inasmuch as she had moved first to punish him, if guilty, for crime committed here. How then can it be said that Connecticut participated in his surrender? It is not true, either in fact or by force of the constitution, that she did so. It was not the act of the obligee, and therefore there is no defense upon this ground.

We therefore advise the Superior Court to render judgment in favor of the plaintiff to recover the amount of the bond without interest.

In this opinion the other judges concurred.