UNITED STATES (VALLEJO v.). See Cases Nos. 16,818 and 16,819.

UNITED STATES (VALLIERE v.). See Case No. 16,822.

## Case No. 16,607.

UNITED STATES v. VAN FOSSEN et al.

[1 Dill. 406.] [1]

Circuit Court, D. Kansas. 1871.

RECOGNIZANCE—EFFECT OF SUBSEQUENT IMPRISONMENT OF PRINCIPAL COGNIZOR BY STATE AUTHORITY—DEATH.

1. It is no defence to sureties on a recognizance given to the United States in a criminal case, that their principal, after entering into the recognizance, and before the time fixed for his appearance in the United States court, went beyond the jurisdiction of the district, into another state, and there committed an offence against its laws, or was there arrested for a prior offence against its laws, in punishment for which he was, at the time the recognizance was declared forfeited, in actual confinement in the penitentiary of such state.

[Cited in Taylor v. Taintor, 16 Wall. (83 U. S.) 370–372; In re James, 18 Fed. 857; U. S. v. McGlashen. 66 Fed. 538.]

[Followed in State v. Horn, 70 Mo. 467.]

2. Whether, in such case, the sureties would have been exonerated had the subsequent arrest and confinement been by the United States—quere?

[Cited in Re James, 18 Fed. 857.]

3. Death of the principal, after default and forfeiture of his recognizance, does not exonerate his sureties.

[Cited in U. S. v. McGlashen. 66 Fed. 538.]

[4. Cited in U. S. v. Wells, Case No. 16,665, to the point that no process from a federal court can reach a prisoner in the prior custody of a state court.]

William S. Dunn at the October term, 1868, of the United States district court for the district of Kansas, was indicted for robbing the United States mail, and was duly arrested therefor by the marshal of the district on the 4th of April, 1870. On the 4th day of May, 1870, Dunn, as principal, and the present defendants, as his sureties, executed to the United States a recognizance in the penal sum of $2,500, in the usual form, conditioned that the said Dunn should "appear in his own proper person, before the district court of the United States for the d'strict of Kansas, at its next term, to be held at, etc., on the 10th day of October, 1870, and not depart therefrom without leave, etc., then this bond to be null and void, otherwise to remain in full force and effect." Pursuant to the practice of the court, this action is brought upon the recognizance; and it is alleged in the petition that Dunn failed to appear at the term specified; that the sureties, though duly called, and required to produce him according to the tenor of the condition of the bond, failed to do so, and that thereupon the same was duly forfeited. The sureties in the recognizance, for answer, plead in substance: "That, after they entered into it, Dunn, the principal, went beyond the jurisdiction of the United States court, into the state of Missouri; that on the 10th day of June, 1870, he committed, in Marion county, in that

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

state, the crime of grand larceny, for which he was duly indicted and convicted by the circuit court of Marion county, and sentenced for the term of six years to hard labor in the penitentiary of the state of Missouri, to which he was taken by the authorities of the state, to undergo his imprisonment; that he was, pursuant to said sentence, in the custody of the warden of the prison when such recognizance was forfeited: wherefore, said Dunn could not appear in his own proper person before the United States district court, as required by the recognizance; and the sureties, without any fault on their part, are thereby prevented from producing the said Dunn to answer the indictment therein pending against him." To this answer, the district attorney demurs, on the ground that the facts therein pleaded do not discharge the defendants from liability.

A. H. Horton, U. S. Dist. Atty.

W. C. Webb and McComas & McKeagan, for defendants (sureties).

Before DILLON, Circuit Judge, and DELAHAY, District Judge.

DILLON, Circuit Judge. Examination and reflection have confirmed my first impression that the facts pleaded in defence do not, in law, exonerate the defendants from liability on the recognizance. The recognizance is a contract between the cognizors and the government of the United States, that, if the latter would release the principal recognizor from custody, the former would undertake that he should personally appear at the specified time and place, to answer the indictment. The condition of the recognizance was broken by his failure to appear; and the parties to it became absolute debtors to the United States for the amount of the penalty (People v. Anable, 7 Hill, 33), and must be held liable to pay the same, unless they can show some matter legally sufficient to excuse this failure.

"It is a general principle of the law," says Nelson, C. J., "that where the performance of the condition of a bond or recognizance becomes impossible by the act of God, or of the law, or of the obligee, the default is excused." People v. Bartlett, 3 Hill, 570, and authorities cited, approved and followed; Caldwell v. Com., 14 Grat. 698; and see, also, Way v. Wright, 5 Metc. (Mass.) 380; State v. Allen, 2 Humph. 258; Brown v. People, 26 Ill. 32; People v. Manning, 8 Cow. 297. The principal cognizor was not prevented by sickness or death, or any act of God, from keeping the condition of the bond; and hence we have only to consider whether the defendants are excused of the forfeiture by the act of the law, or by the act of the obligee. The obligee in the recognizance is the United States, whose criminal laws the principal obligor was indicted for violating. It is not alleged in the answer that the United States subsequently arrested and imprisoned him, but

that this was done by the state of Missouri, a stranger to the recognizance. If it were shown that the United States had, by a subsequent arrest and conviction in another district, for another offence against it, prevented the performance of the condition, the question would be more complicated and difficult of solution; and one respecting which the cases in the state courts seem to differ. Brown v. People, 26 Ill. 32; Devine v. State, 5 Sneed, 623; Alguire v. Com., 3 B. Mon. 349; Ingram v. State, 27 Ala. 17, 20. Compare People v. Bartlett, 3 Hill, 570; Caldwell v. Com., 14 Grat. 698.

The United States and the state of Missouri are wholly distinct parties, and the action of the state authorities cannot be imputed to the government of the United States as an obstruction or interruption by it to the performance of the condition of the recognizance. It is therefore plain that there is no act of the obligee which excuses the default of the principal obligor. Hence, the defence pleaded must rest upon the proposition that the performance was excused by the act of the law. This makes it necessary to consider what is an act of the law, in the sense of the rule. "There is a diversity," says Brian, C. J., "where a condition becomes impossible by the act of God, as death, and where by a third person (or stranger), and where by the obligor, and where by the obligee; the first and last are sufficient excuses of forfeiture, but the second is not; for in such case, the obligor has undertaken that he can rule and govern the stranger, and in the third case, it is his own act." Vin. Abr. tit. "Condition," G. c., pl. 19, quoted by Nelson, C. J., in People v. Bartlett, supra.

A distinction is, in my opinion, to be observed between the act of the law, proper, and the act of the obligor, which exposes him to the action and control of the law. The facts pleaded by the sureties show that their principal was prevented from appearing, not by an act of the law, properly viewed, but by reason of his own voluntary act, which rendered him amenable to the criminal laws of another jurisdiction. There would be no one so bold as to claim that the principal should be allowed to set up, as a defence to this recognizance, that he had thus been prevented from appearing; and the sureties are so far bound up with their principal, that they must show that he had a sufficient excuse for not keeping the condition of the bond.

The case stands thus: The United States had the actual custody of the principal, to answer an indictment which had already been preferred against him. Upon the recognizance being taken, the principal was delivered into what Blackstone calls the "friendly custody" of his sureties, instead of being committed to prison. 4 Bl. Comm. 301. They thenceforth became invested with full authority over his person. They are his jailors. They may take him at any time or

place; in the state, or beyond it. They are aptly said to have the principal always upon the string, and they may pull it when they please, to surrender him in their own discharge. 6 Mod. 231. If they do not exercise their power to prevent his going beyond the jurisdiction, and he does so, with or without their consent, and commits an offence, and is sentenced to prison for it, this cannot be accepted by the state in whose tribunals the recognizance was taken, as a defence thereto. Upon considerations such as these, it was adjudged by the supreme court of Tennessee to be no defence to sureties, that, after the recognizance was entered into, and before the forfeiture was taken, the principal was arrested in another state for an offence committed there, and, by reason of such imprisonment, disabled or prevented from keeping the conditions of the recognizance. Devine v. State, 5 Sneed, 623.

This case, in principle, is like the case at bar, and may be distinguished from those where, as in Caldwell v. Com., 14 Grat. 698, and People v. Bartlett, 3 Hill, 570, the subsequent imprisonment is by the authority of the same state which is seeking to enforce the recognizance, and where it is held that the sureties were discharged by the act of the obligee. But this is a point on which, as before observed, the cases are conflicting, and as to which we need not express any opinion. Brown v. People, 26 Ill. 32; Alguire v. Com., 3 B. Mon. 349; Ingram v. State, 27 Ala. 17; Gingrich v. People, 34 Ill. 448; U. S. v. French [Case No. 15,165]; State v. Scott, 20 Iowa, 63; People v. Cushney, 44 Barb. 118; Winninger v. State, 23 Ind. 228; State v. Allen, 2 Humph. 258.

Other considerations arising out of the peculiar relations of the state and general government, tend to vindicate the correctness of the view that the defence must be held insufficient. The general government and the several states have their separate criminal codes. If a person is in the actual custody of the United States for a violation of its laws, no state can by habeas corpus, or any other process, take such person from the custody of the federal tribunal or officer. So, on the other hand, a person in custody under the process or authority of a state, is, by express enactment, beyond the reach of the federal courts or judges. Judiciary act, § 14; Act March 2, 1833, § 7; 4 Stat. 634; Ex parte Dorr, 3 How. [44 U. S.] 103, 105; U. S. v. French [supra]; Ex parte Forbes [Case No. 4,921]. When the state of Missouri arrested Dunn for an offence against its laws, there was no power in the United States government to take him from the custody of the state, and subject him to trial and punishment for his prior violation of the laws of the United States. Not only so, but the principle would be the same if Dunn had remained in Kansas, and had been in the custody of that state for an offence against its laws—he would be beyond the reach or process of the federal courts, though sitting in the same district.

In the exercise of their respective systems of criminal jurisprudence, neither the state nor the United States could admit the sufficiency of such a defence as is here pleaded. In this case, Dunn was indicted for an offence against the general government, of a highly penal nature. It is punished much more severely than the offence for which he was subsequently convicted in Missouri; and if the defence here insisted on were to prevail, a defendant guilty of a grave offence, would be allowed the opportunity of evading or postponing punishment therefor, by giving bail (who incur no liability) and then committing, against another jurisdiction, a lesser offence, and submitting himself to its actual custody. Neither a state nor a federal court can be expected to recognize as law, a principle which is attended with such consequences, and which not only defeats justice, but has a tendency to encourage the commission of crime. If cases of hardship upon sureties arise, their appeal must be to the executive department, which has the power to relieve them.

Demurrer sustained.

Upon the foregoing decision being made, the sureties filed an amended answer, alleging the same facts as before, except that it is stated that the larceny for which Dunn was convicted, in Missouri, was committed prior to the date of the recognizance or bond in suit. It is also alleged that, on the 10th day of March, 1871 (which was after the forfeiture), said Dunn died in the penitentiary of the state of Missouri.

THE COURT (present, MILLER and DILLON, JJ.) sustained a demurrer to the amended answer, observing that the amendment as to the date at which the offence in Missouri was committed, did not change the legal obligations of the sureties as declared in the foregoing opinion, and that the law is settled, that the death of the principal, after default and forfeiture, does not exonerate his sureties.

Judgment accordingly.

NOTE. Since the foregoing decision was made, the reporter has met a note of the case of Taintor v. Taylor, 36 Conn. 242, in which a prisoner gave bond, with sureties, for his appearance at the next term of a court in Connecticut; but, before the term, was arrested in New York, upon a requisition from Maine, for a crime previously committed in the latter state, and was actually in prison therein at the time his recognizance required his appearance in the court in Connecticut; and it was adjudged that these facts constituted no defence to a suit on the bond.