# CHARLESTON.

CLELL SMITH *v.* LADY T. BAKER.

Submitted April 25, 1922.   Decided May 2, 1922.

1. PRINCIPAL AND AGENT—*Principal Seeking Recovery on Contract Made by Undisclosed Agent Must Prove Agency When Disputed.*

    One who seeks recovery upon a contract which he claims was executed upon his behalf by his agent whose authority was entirely unknown, and whose alleged agency was not disclosed to the opposite party, must, if the agency be disputed, prove that he is the principal in such contract by a preponderance of evidence.  (p. 86).

2. APPEAL AND ERROR—PRINCIPAL AND AGENT—*Undisclosed Principal May be Shown by Indirect Evidence; Verdict Not Disturbed Where Evidence Conflicts.*

    In such case the interest of the person claiming the right to recover as the undisclosed principal may be shown, not only by direct evidence, but by other facts and circumstances, and by the conduct of the parties in carrying out the contract where the same has been executed, and the lack of such interest may likewise be made to appear; and where a substantial conflict exists as to whether or not the plaintiff is the real contracting party the verdict of a jury based thereon in favor of the defendant, and denying the plaintiff's right to recover, should not be disturbed.  (p. 87).

Error to Circuit Court, Cabell County.

Action by Clell Smith against Lady T. Baker.  A verdict

for the defendant was set aside on motion, and the defendant brings error

*Reversed and judgment for defendant.*

*Bowman & Taylor,* for plaintiff in error.
*Daugherty & Young,* for defendant in error.

RITZ, JUDGE:

This suit was instituted for the purpose of recovering the balance claimed by the plaintiff, a building contractor, for remodelling defendant's residence and constructing for her a garage. The trial in the circuit court resulted in a verdict in favor of the defendant, which on motion the court set aside, to review which action this writ of error is prosecuted.

It appears that the defendant desired to make some changes in her residence in the city of Huntington, and also to construct a garage in connection therewith. She employed an architect who made plans and specifications showing the changes desired by her in the residence, and also for the garage building. This architect undertook to procure for her someone who would do the work desired. He did bring a man by the name of W. L. Smith, who is a son of the plaintiff, and the defendant claims that he introduced him as a contractor who would do the work, who was honest and reliable, and that acting upon this representation she directed Mr. Smith to proceed with the work of remodelling the house. No definite arrangement was made as to the amount to be paid the contractor, but there seems to have been a tacit understanding that he would receive the usual compensation building contractors were receiving at that time, which was ten per cent. of the cost of the labor and material required in the work. The work of remodelling the residence proceeded under Mr. W. L. Smith's supervision, and when it was nearing completion the defendant asked Mr. Smith what he thought the work was going to cost, at the time informing him that she only had a limited amount of money to spend in remodelling

the house and building the garage, and that she would not undertake the construction of the garage until she ascertained that she would have sufficient money to pay for both pieces of work. She and her father, who was present at the time, both testify that Mr. W. L. Smith informed her that he had carefully figured up all of. the cost of remodelling the dwelling, and what it would take to complete it, and that it would not exceed three thousand dollars; that it might not run over twenty-five hundred dollars. She then asked him what it would cost to construct the garage in accordance with the plans and specifications, and according to the statement of herself and her father he informed them that he could figure that out exactly, and that he did make some calculations and informed her that it would not be more than thirty-five hundred dollars. She then asked him if he could guarantee these figures, and he assured her that he could; that he would guarantee that the work of remodelling the house would not cost more than three thousand dollars, and the work of constructing the garage not more than thirty-five hundred dollars. This brought the limit of cost within the amount she contemplated spending, and she directed him to proceed with the work of constructing the garage. Smith did not make any requests for money to pay his workmen, or to pay for material until the work had progressed some little time, it appearing that it began about the middle of September, and the first request for money was made on the third day of November, at which time he requested that he be paid two thousand dollars on account of the work. A brother of the defendant was assisting her in looking after the financial arrangements, and at W. L. Smith's request gave him a check for two thousand dollars, being satisfied that there was more than enough work done to cover that amount at that time. According to the statement of this brother he started to make this check payable to W. L. Smith, who it seems the defendant and all of the people connected with her took to be the contractor, and who was the man who actually supervised the work as it was being done, when he, . W. L. Smith, requested that the check be made to Clell Smith, his father, and in accordance with this request the

check was so drawn, Taylor stating that he did not inquire the reason for this, but simply made it that way at the request of W. L. Smith. Early in December W. L. Smith requested defendant's brother to make him another payment of two thousand dollars, but before making this he desired to see the bills for the work and calculate the amount thereof. The bills for material and statements for labor were produced. After going over the material bills checks were drawn to the parties furnishing the material for these amounts, and in checking over the amount for labor furnished on the house the defenadant's brother discovered that there was being charged one dollar and twenty-five cents an hour for each carpenter, and seventy-five cents an hour for the common laborers, when the wage scale for this class of labor provided one dollar an hour for carpenters, and fifty cents an hour for common labor. He also discovered that in the account W. L. Smith had charged for his own labor solid time from the commencement of the work until it was stopped at one dollar and twenty-five cents an hour, and in addition to this had added ten per cent. for the cost of supervision. He declined to make any settlement on any such basis, contending that the contractor was only entitled to receive what he actually paid the men who worked on the buildings, and ten per cent. commission for his services upon the amount expended for labor and material. W. L. Smith insisted at this time that he was not the contractor at all, but that his father, Clell Smith, was the contractor, and that he was simply an employe on the job, and was receiving wages from his father, and that these wages must be included in the cost of labor and material, and the commission of ten per cent. paid on the whole amount, including his wages, to his father as the contractor for the work. This left, according to Smith, something over eleven hundred dollars still unpaid, while, according to the defendant, there remained a little less than five hundred dollars still unpaid. The defendant offered to pay this sum in settlement of the amount, but Smith refused to settle on that basis, and his father, Clell Smith, then insti-

tuted this suit for the purpose of recovering what he claimed to be due upon the theory above outlined.

It will at once be perceived that the amount in controversy between the parties is the wages claimed by the plaintiff for his son, W. L. Smith, while the work was being done, and the ten per cent. commission thereon, the plaintiff's contention being that he was the contractor and was entitled to receive the ten per cent. for supervising the work, and that his son was simply a carpenter, and being such he is entitled to collect from the defendant wages for his son as well as commission on his wages, while the defendant's contention is that W. L. Smith himself was the contractor actually supervising the work during the whole time, performing little, if any, labor in connection with it, except the work of supervision, and that Clell Smith was in fact on the work on but few occasions, and never had any conversations or made known to the defendant that he was in any wise connected therewith.

Both the plaintiff and his son, W. L. Smith, testify that plaintiff was the contractor, and that W. L. Smith was only his agent, and had nothing to do with the contract, and argue that whether the defendant should be required to pay wages for the son W. L. Smith for supervising the work or not can make no difference as to the plaintiff's right to recover; that the balance due, whatever it might be, is due to the plaintiff; that if W. L. Smith is to be treated as the agent of his father, the real contractor, and performed the duty of supervision which the contractor would be expected to perform for the ten per cent. commission, even then the plaintiff would be entitled to recover the balance which the defendant admits to be unpaid. This contention would be true if the plaintiff was in fact the contractor. The defendant's contention is, however, that the plaintiff was not the contractor; that W. L. Smith was in fact the contractor, and that the arrangement which is now set up by the plaintiff is simply for the purpose of creating a situation whereby the defendant can be made to pay a considerable sum as wages to the plaintiff's son and commissions thereon to the plaintiff.

There is no doubt from the evidence that the plaintiff never disclosed himself as the principal contractor at any time during the progress of the work, and never made any contention that he was such until after the work was completed, nor did his son W. L. Smith, who actually supervised the work and carried it on, ever make any such contention. In fact the defendant attempted to show, but the court would not permit it, that W. L. Smith on more than one occasion informed people that this job was his own, and that his father had no interest in it. Why this evidence was rejected we are at a loss to understand as it flatly contradicted the testimony of W. L. Smith.

The questions for determination were, first, was the plaintiff the principal and W. L. Smith simply his agent? Of course, if the jury found this question in the negative that was the end of the case, and plaintiff was not entitled to recover. If, on the other hand, they found an affirmative answer to this question, the next inquiry would be, how much is the plaintiff entitled to recover? Is he entitled to recover wages for his son for supervising the construction of these buildings and performing the very work which the contractor, as shown by the evidence, usually performs for the ten per cent. commission paid? There is much evidence in this case to the effect that W. L. Smith did no work on these buildings except what is ordinarily done by the contractor in the way of supervision, and for which he is compensated by the commissions ordinarily allowed. It is quite true that the plaintiff and his son both swear that the plaintiff was the principal and the son simply the agent, but neither of them undertake to say that the defendant knew anything about this. The case, so far as they are concerned, proceeded upon the theory that the plaintiff is an undisclosed principal, and is entitled to take the benefit of a contract made by his agent. When one seeks recovery by virtue of a contract such as this as the the undisclosed principal, the burden is upon him to establish that fact when it is disputed, and not only direct evidence may be considered upon the question of whether the agency does or does not exist, all of the circumstances surrounding the parties, their con-

duct and communications may be considered, and these circumstances and surroundings are frequently sufficiently probative to overcome their direct evidence. Clark & Skyles on Agency, § 63; 31 Cyc. 1638; 21 R. C. L., title "Principal and Agent" § 6. In this case the jury had before it the method of doing this work. They had the undisputed fact that the work which is usually done by a contractor, that is, the work of supervision, of purchasing materials, and having general control of it, was performed by W. L. Smith; that according to the evidence of the defendant, he did little if any manual labor upon the job; that the plaintiff never was on the premises but a very few times and then never exercised any authority in the way of supervision or direction; and while the defendant lived in a house adjoining the one being remodelled, and her father in another house adjoining it, and were on the work frequently, the plaintiff never intimated to either of them that he had any connection with it, and of course the fact that if the plaintiff's contention is sustained it will result in a substantial benefit to him, that is, he would get commissions in excess of what he would be entitled to if the defendant's contention is correct, and his son would get wages for solid time while the work was progressing, instead of receiving the commissions which are ordinarily paid for supervising such contracts.

The defendant asked the court to instruct the jury that if it believed from the evidence that the plaintiff was not the contractor, but that his son W. L. Smith was in fact the contractor, plaintiff was not entitled to recover in this case. This instruction the court refused. In our view of the case it should have been given. There was ample evidence here upon which the jury might find that the plaintiff was not the contractor, and had no connection in the world with the transaction. Notwithstanding the refusal of the court to give this instruction, the jury found in favor of the defendant. We perceive no reason why this verdict should have been set aside. The facts upon which it is based are disputed. The direct evidence of the plaintiff and his son tend to establish his right to recover, while facts, circum-

stances and conduct of the parties proven on behalf of the defendant strongly tend to show that the plaintiff did not have any interest in this contract or transaction, and that the amount remaining unpaid, whatever it may be, must be recovered in a suit by W. L. Smith, the real contractor, according to the defendant's contention.

Our conclusion is therefore to reverse the judgment, reinstate the verdict of the jury, and render judgment thereon in favor of the defendant, without prejudice, of course, to the rights of W. L. Smith to collect any balance which may remain unpaid on the contract.

*Reversed and judgment for defendant.*