At the January Term, 1942, of the Superior Court of Buncombe County, a judgment was entered against William Dudley Pelley, and from said judgment appeal was taken to the Supreme Court.
The defendant Pelley was released on a bail bond in the sum of $10,000.00, executed 21 January, 1942, by the defendant as principal and Carrie Thrash Dorsett and George B. Fisher, as sureties. The bond was conditioned upon the appearance of the defendant Pelley, at the next term of the Superior Court of Buncombe County, N.C. to be held after the judgment of the Supreme Court of North Carolina was handed down, and then and there to abide the judgment of the Court.
George B. Fisher, being a nonresident of the State of North Carolina, executed the aforesaid bail bond as surety for $2,500.00 cash and deposited said sum with the clerk of the Superior Court of Buncombe County.
The Supreme Court affirmed the judgment of the Superior Court, on 24 June, 1942. The opinion was certified to the clerk of the Superior Court of Buncombe County and received by said court on 25 June, 1942 Whereupon, the Superior Court of Buncombe County, on 26 June, 1942 issued a capias for the arrest of William Dudley Pelley.
The term of court to which Pelley was compelled to appear, under the terms and conditions contained in his bail bond, began in the Superior Court of Buncombe County, N.C. on 27 July, 1942. *Page 686 
On the convening of court on 27 July, 1942, the appellants, who a the sureties on said bail bond, and before the defendant Pelley was called, filed a motion for discharge from liability on said bond. Whereupon, the defendant William Dudley Pelley was solemnly called and failed to answer.Sci fas instanter were ordered and issued by the court against the defendant Pelley, and Carrie Thrash Dorsett and George Fisher, sureties. The sureties, through counsel, waived service of sci fas and filed an answer, and the cause was continued from time to time until the September Criminal Term, 1942, of the Superior Court of Buncombe County. At the aforesaid term, the cause was heard and judgment absolute entered against the sureties in the sum of $10,000.00, George Fisher, however, to be discharged upon the payment of the sum $2,500.00, and the funds in the hands of the clerk of the Superior Court of Buncombe County, deposited by the said George B. Fisher, were condemned for the payment of said sum. Judgment for the balance, to wit, $7,500.00, was entered against Carrie Thrash Dorsett, and the clerk of the Superior Court of said county was ordered to issue execution against the said Carrie Thrash Dorsett for the collection of said judgment.
In answering the sci fas issued herein, the sureties set up as a bar to the right of the State of North Carolina to forfeit the bond executed by them, the fact that on 24 July, 1942, the said William Dudley Pelley was taken into custody by the United States Marshal for the Southern District of Indiana, for removal to the United States District Court for the District of Columbia, upon an indictment returned 21 July, 1942, charging him with certain offenses; and further, Pelley having announced his inability to furnish bail in that proceeding, Adelaide Pelley surrendered him to the District Court for the Southern District Indiana, on 24 July, 1942, and was permitted to take down the sum $15,000.00, which she had deposited with the Court as a bond for the appearance of William Dudley Pelley in said Court on 28 July, 1942. The record is silent as to the amount of the bond fixed by the authorities in connection with the indictment in the District of Columbia, which bond Pelley announced his inability to give.
From the judgment entered in the Superior Court the defendant Carrie Thrash Dorsett and George B. Fisher, appeal to the Supreme Court, assigning error.
The appellant, George B. Fisher, failed to file a brief in this Court, as required by Rule 28 of the Rules of Practice in the Supreme Court,221 N.C. 563. Therefore, upon motion of the Attorney-General and the Board of Education of Buncombe County, the appeal of George B. Fisher is dismissed.
The first assignment of error is to the failure of the court to hear the motion to relieve the sureties of liability before the defendant was called and failed to answer. The second exception and assignment of error is based upon the failure of the court to give notice to the defendants or their counsel of the hearing held at September Criminal Term, 1942, of the Superior Court of Buncombe County, when judgment absolute was entered against the sureties. These exceptions cannot be sustained. The record discloses that this matter was continued from time to time until the September Term of said court, at which term a hearing was held and judgment entered. It will be noted that counsel for defendants at that time, as well as the present counsel for the appealing defendant, made no motion to set aside the judgment herein for excusable neglect. C. S., 600; Bank v. Duke,187 N.C. 386, 122 S.E. 1; Hill v. Hotel Co., 188 N.C. 586,125 S.E. 266; Hooks v. Neighbors, 211 N.C. 382, 190 S.E. 236.
The third assignment of error, challenging the correctness of the judgment below, does present the real question involved in this appeal. Has the defendant, Carrie Thrash Dorsett, shown a valid legal reason for her failure to have William Dudley Pelley appear in the Superior Court of Buncombe County, N.C. as provided in her bond? If so, the judgment is erroneous.
An examination of the case of United States v. William Dudley Pelley, Circuit Court of Appeals, Seventh Circuit, 132 Federal Reporter, 2nd Series, 170, discloses that Pelley was tried in the District Court of the United States for the Southern District of Indiana, convicted and sentenced to prison for a term of fifteen years, for offenses committed after he and his sureties executed the bond under consideration on this appeal. Therefore, it follows that the bond in the sum of $15,000.00, for his appearance in the United States District Court for the Southern District of Indiana on 28 July, 1942, was posted after the execution of the bond in North Carolina. It also appears from the record herein that Pelley was indicted on 21 July, 1942, by a grand jury in the United States District Court for the District of Columbia, and arrested pursuant thereto on 24 July, 1942. However, it will be noted that in the order, dated 24 July, 1942, releasing the $15,000.00 cash bond and directing the delivery of said funds to Adelaide M. Pelley, it was ordered by the Court: "That the said William Dudley Pelley be, and he hereby is, *Page 688 
remanded to the custody of the United States Marshal for the Southern District of Indiana, pending further order of this Court."
The appellant herein, Carrie Thrash Dorsett, is not entitled to the relief she seeks unless she can show that the performance of her undertaking has been rendered impossible or excusable (a) by an act of God: (b) by an act of the obligee; or (c) by an act of law. Where the principal in a bail bond dies before the day of performance or is prevented by illness from appearing, the case is within the first category. Where the principal in a bail bond is in prison within the State, pursuant to a judgment of a court of competent jurisdiction of the State, the case comes within the second category. S. v. Eller, 218 N.C. 365,11 S.E.2d 295; 6 Am. Jur., sec. 139, p. 102. Where the party has been turned over to the Federal Court within the State by a prior bondsman and is serving a sentence imposed by that Court; or if the party has been arrested in the State where the obligation is given and sent out of the State by the Governor upon requisition from another State or other foreign jurisdiction, the case falls within the third category.S. v. Welborn, 205 N.C. 601, 172 S.E. 174; U.S. v. Marrin, 170 Federal Reporter, 476; 6 Am. Jur., sec. 140, p. 103; 8 C. J. S., sec. 77, p. 148.
The appellant herein contends that it was the duty of the State of North Carolina to demand the surrender of Pelley by the Federal authorities to the North Carolina court, on the theory that the North Carolina court had prior jurisdiction. She contends that her principal (b.t.) was prevented from making his appearance in the court below by reason of the failure of North Carolina, the obligee, to assert its right to his custody. The position is untenable. Upon the execution of the bail bond, William Dudley Pelley was delivered into the custody of his sureties. The very purpose of the bond was not to enrich the treasury of Buncombe County, but to make the sureties responsible for the appearance of the defendant at the proper time. In the case of United States v. Marrin, supra, the defendant was released on a bail bond for his appearance in the District Court of the United States for the Eastern District of Pennsylvania. While Marrin was out on bond he went to New York, where he was arrested, convicted upon charges of forgery and grand larceny and sentenced to a term of imprisonment of fifteen years in Sing Sing. The surety on the bail bond in Pennsylvania raised the same question as to the duty of the United States Court to have requested the custody of the principal. The Court said: "Though the United States attorney was present at the hearing, his failure to request Marrin's release was no such act of the obligee as to relieve the surety because non constat that the request would have been granted by the court. It was Marrin's own act in going into that jurisdiction that rendered his appearance impossible. Our attention has not been called *Page 689 
to any case holding that under any circumstances the prosecuting attorney of a district in which the recognizance runs is required to make an effort to secure the removal or release of an alleged criminal arrested in another jurisdiction. He may do so, but he is not required to act. The recognizance is taken to secure that very result. Its condition is absolute in this regard, and, in our judgment, it would be a very dangerous innovation to require the government to not only see to it that responsible bail is secured, but, in addition, required it to keep its prosecuting officers in readiness to appear in other and distant jurisdictions to aid the principal in the recognizance to extricate himself from an arrest from which alone the latter is to blame."
We come now to the question whether or not Pelley's imprisonment under a sentence imposed in another jurisdiction is such an act of law as to release the appealing surety from liability on her bond. The answer is "No."
In the case of United States v. Van Fossen et al., Case No. 16,607, 28 Fed. Cas., 357, William S. Dunn, as principal, and the defendants, as sureties, executed a bail bond for the appearance of Dunn in the United States District Court for the District of Kansas. Dunn failed to appear at the term specified. After the execution of the bond, Dunn went beyond the jurisdiction of the United States District Court, into the State of Missouri, where he committed the crime of grand larceny, for which he was duly indicted and convicted in a Missouri Court and sentenced for a term of six years in the State penitentiary. The sureties there, as in the instant case, sought to be released from the penalty of their bond by reason of the imprisonment of their principal in a foreign jurisdiction. The Court said: "The United States and the State of Missouri are wholly distinct parties, and the action of the state authorities cannot be imputed to the Government of the United States as an obstruction or interruption by it to the performance of the condition of the recognizance. It is therefore plain that there is no act of the obligee which excuses the default of the principal obligor. Hence, the defense pleaded must rest upon the proposition that the performance was excused by the act of the law. This makes it necessary to consider what is an act of the law, in the sense of the rule. `There is a diversity,' said Brian, C. J., `where a condition becomes impossible by the act of God, as death, and where by a third person (or stranger), and where by the obligor, and where by the obligee; the first and last are sufficient excuses of forfeiture, but the second is not; for in such case, the obligor has undertaken that he can rule and govern the stranger, and in the third case, it is his own act.' Vin. Abr. tit. `Condition,' G. C., pl. 19, quoted by Nelson, C. J., in People v. Bartlett,supra. A distinction is, in my opinion, to be observed between the act of the law, proper, and the act *Page 690 
of the obligor, which exposes him to the action and control of the law. The facts pleaded by the sureties show that their principal was prevented from appearing, not by an act of the law, properly viewed, but by reason of his own voluntary act, which rendered him amenable to the criminal laws of another jurisdiction. There would be no one so bold as to claim that the principal should be allowed to set up, as a defense to this recognizance, that he had thus been prevented from appearing; and the sureties are so far bound up with their principal that they must show that he had a sufficient excuse for not keeping the condition of the bond. The case stands thus: The United States had the actual custody of the principal, to answer an indictment which had already been preferred against him. Upon the recognizance being taken the principal was delivered into what Blackstone calls the `friendly custody' of his sureties, instead of being committed to prison. 4 Bl. Comm., 301. They henceforth became invested with full authority over his person. They are his jailers. They may take him at any time or place in the state, or beyond it. They are aptly said to have the principal always upon the string, and they may pull it when they please, to surrender him in their own discharge. 6 Mod., 231. If they do not exercise their power to prevent his going beyond the jurisdiction, and he does so, with or without their consent, and commits an offense, and is sentenced to prison for it, this cannot be accepted by the state in whose tribunals the recognizance was taken, as a defense thereto. . . . Other considerations arising out of the peculiar relations of the state and general government, tend to vindicate the correctness of the view that the defense must be held insufficient. The general government and the several states have their separate criminal codes. If a person is in the actual custody of the United States for a violation of its laws, no state can by habeas corpus, or any other process, take such person from the custody of the federal tribunal or officer. So, on the other hand, person in custody under the process or authority of a state, is, by express enactment, beyond the reach of the federal courts or judges. Judiciary Act, sec. 14; Act March 2, 1933, sec. 7; 4 Stat., 634; Ex Parte Dorr, 3 How. (44 U.S.), 103, 105; U.S. v.French, supra (Case No. 15,165) Ex Parte Forbes (Case No. 4,921). When the State of Missouri arrested Dunn for an offense against its laws, there was no power in the United States Government to take him from the custody of the State and subject him to trial and punishment for his prior violation of the laws of the United States. Not only so, but the principle would be the same if Dunn had remained in Kansas, and had been in the custody of that State for an offense against its laws — he would be beyond the reach or process of the federal courts, though sitting in the same district. In the exercise of their respective systems of criminal jurisprudence, neither *Page 691 
the state nor the United States could admit the sufficiency of such a defense as is here pleaded. In this case, Dunn was indicted for an offense against the general government, of a highly penal nature. It is punished much more severely than the offense for which he was subsequently convicted in Missouri; and if the defense here insisted on were to prevail, a defendant guilty of a grave offense, would be allowed the opportunity of evading or postponing punishment therefor, by giving bail (who incur no liability) and then committing, against another jurisdiction, a lesser offense, and submitting himself to its actual custody. Neither a state nor a federal court can be expected to recognize as law, a principle which is attended with such consequences, and which not only defeats justice, but has a tendency to encourage the commission of crime."
The Circuit Court of Appeals, Eighth Circuit, in the case of Weberv. U.S., 32 Federal Rep., 2nd Series, 110, speaking on this identical question, said: "But, as an act of grace, we consider whether Weber is at all aided by the facts stipulated. We think it too plain for argument that he is not, and hold that the incarceration of the principal in a different jurisdiction for a second and different offense against the laws of that jurisdiction, even where the principal is prevented from appearing to answer his bail by such incarceration, does not exonerate the surety. This view is fortified by the great weight of authority, both in state and federal courts. In fact, the cases seem to be practically unanimous in so holding. S. v. Horn, 70 Mo., 466, 35 Am. Rep., 437; United States v. VanFossen, Fed. Cas. No. 16,607, 1 Dill., 406; Devine v. State, 5 Sneed (Tenn.), 623; Taintor v. Taylor, 36 Conn. 242, 4 Am. Rep., 58; UnitedStates v. Marrin (D.C.), 170 F., 476; Mix v. People, 26 Ill. 32;Yarborough v. Commonwealth, 89 Ky. 151, 12 S.W. 143, 25 Am. St. Rep., 524; Adler v. State, 35 Ark. 517, 37 Am. Rep., 48." See also Taylor v.Taintor, 83 U.S. 366; 21 L.Ed., 287; 6 Am. Jur., sec. 140, p. 103; and 8 C. J. S., sec. 77, p. 148.
The surety appealing herein had from 24 June, 1942, until 24 July, 1942, to obtain actual custody of her principal and bring him back to North Carolina, after the Supreme Court had affirmed the decision of the court below, and before he was arrested in Indiana. On this point, the Supreme Court of the United States, in the case of Taylor v. Taintor, supra, said: "The shortness of the time that intervened between the arrest in New York and the imprisonment in Maine on the one hand, and the failure and the forfeiture in Connecticut on the other, are entirely immaterial. Whether the time were longer or shorter, one year or one day, the legal principle involved is the same, and the legal result must be the same. If McGuire had remained in Connecticut he would probably not have been delivered over to the authorities of Maine, and would not, therefore, have been disabled to fulfill the condition of his *Page 692 
obligation. If the demand had been made upon the Government of Connecticut, he might properly have declined to comply until the criminal justice of his own state had been satisfied. This right, it is not to be doubted, he would have exercised. Had he failed to do so, the obligation of the recognizance would have been released. The plaintiffs in error are in fault for the departure from Connecticut, and they must take the consequences. But their fault reached further. Having permitted their principal to go to New York, it was their duty to be aware of his arrest when it occurred, and to interpose their claim to his custody. Alguire v. Com., 3 Bl. Mon., 349, 351. We have shown that when McGuire was arrested in New York the original imprisonment, under the information in Connecticut, was continued; that the bail had a right to seize him wherever they could find him; that the prosecution in Connecticut was still pending, and that the Superior Court having acquired jurisdiction, it could neither be arrested nor suspended ininvitum by any other tribunal. Though beyond the jurisdiction of Connecticut, he was still, through his bail, in the hands of the law of that state, and held to answer for the offense with which he was charged. Had the facts been made known to the executive of New York by the sureties at the proper time, it is to be presumed that he would have ordered McGuire to be delivered to them and not to the authorities of Maine. The result is due, not to the Constitution and law of the United States, but to their own supineness and neglect. Under the circumstances, they can have no standing in court to maintain this objection. The act of the Governor of New York, in making the surrender, was not `the act of the law' within the legal meaning of those terms; but in view of the law was the act of McGuire himself. He violated the law of Maine, and thus put in motion the machinery provided to bring him within the reach of the punishment denounced for his offense. But for this that machinery, so far as he was concerned, would have remained dormant. To hold that the surrender was the act of the law, in the sense contended for, would be as illogical as to insist that the blow of an instrument used in the commission of a crime of violence is the act of the instrument and not of the criminal. It is true that in one case there would be a will and purpose as to the result in question, which would be wanting in the other, but there would be in both, the relation of cause and effect, and that is sufficient for the purposes of the analogy. The principal in the case before us cannot be allowed to avail himself of a impossibility of performance thus created; and what will not avail him cannot avail his sureties. His contract is identical with theirs. They undertook for him what he undertook for himself."
It matters not whether Pelley left the jurisdiction of this State with or without the permission of his sureties, he was entrusted to the *Page 693 
custody. His conduct while in their custody set in motion the machinery of the law in other jurisdictions which made his appearance in Buncombe County, N.C. on 27 July, 1942, impossible. Had Pelley not committed the offenses for which he was tried and convicted in Indiana, and for which he is now imprisoned, he doubtless could have answered to the call of the Superior Court in Buncombe County, N.C. at the proper time. He alone is responsible for his inability to appear in the North Carolina court at the time required in his bail bond. He cannot avail himself of his own wrong and thereby escape the penalty of his bond; and, as stated in Taylor v.Taintor, supra, "What will not avail him, cannot avail his sureties."
Appellant is relying on the case of S. v. Welborn, supra. The case is distinguishable. The sureties on Welborn's bond were released because Welborn was surrendered by his bondsmen for his appearance in Federal Court in this State. The Federal bail bond had been executed prior to the execution of the bond in the State court. The defendant Welborn was surrendered by his sureties, who had the right to surrender him. Further, there is no evidence that Welborn ever left the jurisdiction of the North Carolina court. When North Carolina took Welborn's bond he was in the technical custody of a Federal Court having jurisdiction in this State. These and other distinguishing facts render that case inapposite, and, therefore, not controlling.
Whether or not the Federal authorities, before Pelley's trial and conviction in the United States District Court for the Southern District of Indiana, would have recognized the superior right of Pelley's sureties to his custody, in order that he might appear at the appointed time in the North Carolina court, had they made a request for his surrender to them, we need not consider; since, according to the record, no request was made by them to the Federal authorities for his return to North Carolina.
It is indeed unfortunate for the appealing surety herein, but, when she executed the bail bond for Pelley, she undertook to answer for one who by his own conduct prevented the fulfillment of his obligation. For his default she obligated herself to pay the penalty in the bond.
The judgment below is
Affirmed. *Page 694