------

## In re FOX.

(*District Court, N. D. California.* July 8, 1892.)

HABEAS CORPUS—JURISDICTION OF STATE AND FEDERAL COURTS—CRIMINAL LAW.

Where a person, under bail to answer an indictment in a federal court, is arrested on state process for a crime against the state, his confinement thereunder is not in violation of any law of the United States, and he is not entitled, as a matter of personal right, or at the instance of his sureties, to be released on *habeas corpus*, and placed in the custody of the marshal. If the federal authorities do not insist upon the prior jurisdiction of the federal court, the accused and his sureties have no right to complain. *U. S.* v. *French*, 1 Gall. 1, followed. *In re Neagle*, 39 Fed. Rep. 833, distinguished.

On *Habeas Corpus.* Prisoner remanded.

*Carroll Cook*, for petitioner.
*John A. Hosmer*, Asst. Dist. Atty., for respondent.

MORROW, District Judge. Mortimer Fox was, on the 13th day of December, 1891, indicted by the grand jury of this court for offenses against

the postal laws. The first count of the indictment is based upon section 3892 of the Revised Statutes of the United States, and charges the accused with the offense of taking a letter, which had been in a post office of the United States, before said letter had been delivered to the person to whom it had been directed, with the design to obstruct the correspondence of said person. The second count is based upon section 5470 of the Revised Statutes, and charges the accused with the offense of receiving a check and order for the payment of money stolen from the mail. These crimes are charged to have been committed in the city and county of San Francisco on the 7th day of September, 1891. The accused was arrested at Omaha, Neb., and, by the order of the United States district judge of that district, he was removed to this district. He was arraigned in this court March 11, 1892, when his attorney interposed a demurrer to the indictment. The demurrer was sustained as to the first count, and overruled as to the second count. The accused was thereupon, on the 29th day of April, 1892, admitted to bail in the sum of $1,500, and released from custody. It was provided in the bail bond, among other things, that he should appear in court on the 9th day of May, 1892, and afterwards, whenever or wherever he might be required to answer the said indictment.

On the 9th day of May, 1892, the attorney for the accused appeared in court, and, representing that his client had been arrested and imprisoned by the state authorities, moved for a bench warrant to issue to apprehend and bring the accused into this court. The warrant was issued and placed in the hands of the marshal, who, on May 12, 1892, made return that the party was in the custody of the state authorities, and that he was unable to serve the writ. Thereupon the attorney for the accused sued out this writ of *habeas corpus*. It appears that, immediately after the accused gave bail and was released from the custody of the United States marshal, he was arrested and imprisoned by the police of the city and county of San Francisco, upon warrants charging him with crimes, under the laws of the state of California; and, while so in prison, he was again arrested upon a warrant, issued out of the police court of the city of Oakland, in the county of Alameda, in this state, and was thereupon taken to the city prison of Oakland, where he has since been confined. The petition for the writ of *habeas corpus* alleges that the accused is imprisoned, detained, confined, and restrained of his liberty by the chief of police of Oakland, and that the said imprisonment, detention, confinement, and restraint are illegal, and that the illegality thereof consists in the fact that the said Fox was, prior to the said detention by the said chief of police, and is now, under indictment in this court, and in the custody of this court; that a bench warrant has been issued out of this court for the arrest of said Fox on said indictment, but, by reason of the detention aforesaid, the bondsmen of said Fox on said indictment are unable to produce and surrender said Fox into the actual custody of this court, and said detention is contrary to the laws of the United States, and against the jurisdiction of this court.

To the writ of *habeas corpus* the chief of police of Oakland has made

return that he holds the defendant, Mortimer Fox, in his custody on a charge of felony, viz., forgery, alleged to been committed on the 14th day of October, 1891, and also by virtue of a warrant of arrest issued out of the police court of the city of Oakland, on a complaint duly sworn to by C. R. Yates, charging the defendant, Mortimer Fox, with the crime of forgery. A copy of the complaint and warrant is annexed to the return, from which it appears that the defendant is charged with having committed the crime of forgery on the 14th day of October, 1891, at the city of Oakland, in this state, in forging an indorsement on a certain check or order for payment of money, with intent to defraud the Oakland Bank of Savings. The police court of Oakland has jurisdiction to examine this case, and commit and hold the accused to bail for trial in the proper court. The only question is as to the extent of the jurisdiction that court has acquired over the person of the defendant to detain him in prison to answer the charge preferred against him in that court, while he is under bail to appear and answer an indictment in this court. The object sought to be accomplished by the writ of *habeas corpus* in this case is therefore to take the defendant out of the custody of the state authorities, and place him in the custody of the United States marshal of this district, to respond to the indictment in this court. This application comes from the accused, but his attorney claims also to represent the sureties on the bail bond, who, it is said, desire to surrender the accused, under the provisions of section 1018 of the Revised Statutes, as follows:

"Any party charged with a criminal offense, and admitted to bail, may, in vacation, be arrested by his bail, and delivered to the marshal or his deputy, before any judge or other officer having power to commit for such offense; and, at the request of such bail, the judge or other officer shall recommit the party so arrested to the custody of the marshal, and indorse on the recognizance, or certified copy thereof, the discharge and exoneratur of such bail; and the party so committed shall therefrom be held in custody until discharged by due course of law."

The power to award the writ of *habeas corpus* by the courts of the United States is found in the following provisions of the Revised Statutes:

"Sec. 751. The supreme court, and the circuit and district courts, shall have power to issue writs of *habeas corpus*.

"Sec. 752. The several justices and judges of the said courts, within their respective jurisdictions, shall have power to grant writs of *habeas corpus* for the purpose of an inquiry into the cause of restraint of liberty.

"Sec. 753. The writ of *habeas corpus* shall in no case extend to a prisoner in jail, unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof; or is in custody in violation of the constitution, or of a law or treaty of the United States; or, being a subject or citizen of a foreign state, and domiciled therein, is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission or order or sanction of any foreign state, or under color thereof, the validity and effect whereof de-

pend upon the law of nations; or unless it is necessary to bring the prisoner into court to testify."

It is urged that, although Fox is in jail, he is in custody in violation of a law of the United States, and, under the provisions of section 753 of the Revised Statutes, just cited, the writ of *habeas corpus* issued by this court extends to him. It is not contended, however, that his imprisonment is in violation of any statute law of the United States, but it is claimed, in effect, that his imprisonment by the state court is in violation of the law of procedure which gives this court authority to exercise its jurisdiction undisturbed.

In *Taylor* v. *Taintor*, 16 Wall. 466–370, the supreme court declared the doctrine that—

"Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted, and this rule applies alike in both civil and criminal cases. It is, indeed, a principle of universal jurisprudence that, where jurisdiction has attached to person or thing, it is, unless there is some provision to the contrary, exclusive in effect until it has wrought its function."

But how and by whom may this question of jurisdiction be raised? Has the accused, whose alleged malefactions have brought him within the range of two jurisdictions, the right to select the one to which he will first respond? When the questions involved in this case were argued by counsel representing the accused and his sureties on one side, and opposed by counsel representing the state authorities on the other, the United States attorney was in court, but made no suggestion that the United States desired the presence of the accused in this court in advance of the hearing in the state court. There is therefore no actual present conflict of judicial action, except such as the accused and his sureties seek to create by the present proceedings.

In *Mackin* v. *People*, 8 N. E. Rep. 178, 180, this question of jurisdiction, in a somewhat different form, was considered by the supreme court of Illinois. Mackin had been tried and convicted in the circuit court of Cook county, Ill., and imprisoned in the state penitentiary at Joliet, while on bail under an indictment pending in the United States district court for the northern district of Illinois. His sureties petitioned the supreme court of the state for a writ of *habeas corpus*, alleging that, jurisdiction having attached to the person of said Mackin first in the United States courts, it was exclusive in effect, until it had wrought its function, and then, and not until then, could the criminal court of Cook county acquire jurisdiction over the person of Mackin to arrest and try, convict and sentence, him on the indictment found against him in said court. The prayer of the petition was that Mackin be discharged or surrendered to his sureties. The court said:

"It is claimed, however, on the part of the petitioner, that although Mackin was personally present in court during the trial of the cause, although there was actual control of his person, still that the fact that he had been previously arrested, and had previously given bail for his appearance in the United States circuit (district) court, rendered that presence, as to him and as to the

conviction which followed, a fraud upon the law and a nullity, so that, in construction of law, there was no jurisdiction of the person. We are not able to coincide in this view. We concede the position, established by the numerous authorities that are referred to in the petition, that, where a party commits offenses against two or more jurisdictions, the jurisdiction first obtaining custody of the defendant is entitled to proceed and try him. That, however, is a matter more of comity, and in order to avoid unseeming strife between conflicting jurisdictions, than as a matter of right to the defendant. We do not recognize that a defendant who is guilty of crime has a constitutional, statutory, or common-law right absolutely to be tried for one offense before he is tried for another offense. If, in this case, the sheriff of Cook county had undertaken to have taken Mackin from the possession of the United States marshal, and the question was submitted whether he could do so or not, unquestionably it would have been held that the marshal was entitled to his possession until after the United States court had disposed of the case against him. We recognize the position taken in the argument of counsel, also, that for many purposes the defendant who is out on bail is regarded as constructively in a living prison,— that is to say, under the control of his bondsmen,—but this is only constructive, and not universal. We could not consent to recognize it to be the law that if a party had committed some petty offense against the revenue laws of the United States, and enters into a recognizance of a few hundred dollars for his appearance at a subsequent term, and is out on bail, and thereafter had committed murder, or some other very serious crime, that he could not be arrested for the charge of murder which he had committed until after he had chosen to enter his appearance in the federal court, or his bondsmen had chosen to take and surrender him to that court, and it had tried him and convicted him, and executed its sentence upon him; and the position contended for would lead, in our estimation, to that consequence. When a party commits a crime against the law, so far as he is concerned, and so far as those who have previously been his bondsmen are concerned, he is liable to be arrested, and required to give bail, if it be bailable, and, if not, to be imprisoned for the commission of that crime, in order that he may answer for it. The comity just recognized as existing between the courts for different claims on parties is never to be exercised so as to operate to the release of offenders against the law upon mere technicalities."

Whether a petition was presented to the United States district court for the purpose of obtaining the judgment of that court upon the question of its jurisdiction over the person of the defendant does not appear, but it is evident that there was no real conflict between the two courts, and that the opinion of the supreme court of Illinois was accepted as a correct statement of a proper qualification of the rule of comity that should obtain between the two jurisdictions in such a case.

The decision of the United States circuit court for this circuit in *Re Neagle*, 14 Sawy. 232, 39 Fed. Rep. 833, has been cited as declaring principles of law applicable to this case, but the facts in that case were very different. Neagle was a deputy United States marshal, specially commissioned and instructed by the United States marshal to accompany Mr. Justice FIELD and protect him from threatened violence. In the execution of this duty Neagle shot and killed Judge Terry. Neagle was thereupon arrested by an officer of the state, and imprisoned in the county jail of San Joaquin county. In the petition to the circuit court for a writ of *habeas corpus*, it was alleged, among other things, that

Neagle had been arrested and confined in prison for an act done by him in the performance of his duty. It thereupon devolved upon the court to inquire whether he was "in custody for an act done or omitted in pursuance of a law of the United States." Upon that inquiry the court held, that "it is the exclusive province of the judiciary of the United States to ultimately and exclusively determine any question of right, civil or criminal, arising under the laws of the United States." Another question was as to the right of the petitioner to have his case heard and determined in a United States court, and upon that point the court observed:

"What are the rights of the petitioner as to having his case heard and disposed of in the courts of the sovereignty whose servant he is, and whose laws he was employed in executing? If he has a right to be heard in this court, then we must hear him, willing or unwilling. There is no alternative. Whether the writ should issue in this case was not a question of expediency, and whether the petitioner shall be discharged or remanded is not a question of policy or comity, as suggested in some quarters. It is a question of personal right and personal liberty, arising under the constitution and the laws of the United States, which the court cannot ignore."

These and other like observations, in the same line of argument, were applicable to the facts in that case, but it would be a strained and unnatural construction to apply them to the facts in the case at bar, where no claim is made that the accused is "in custody for an act done or omitted in pursuance of a law of the United States." We are, however, not without light from the national judiciary on the very question under discussion.

In the case of *U. S.* v. *French*, 1 Gall. 1, an information had been filed in the United States circuit court for the district of New Hampshire against the defendant for a violation of the embargo act of January 9, 1809. He was arrested, and gave bail, with sureties, for his appearance to answer the information. He was afterwards arrested, and confined in jail, on mesne civil process, under authority of the state of New Hampshire. His sureties thereupon moved in the United States circuit court for a writ of *habeas corpus* to bring up the body of the defendant to surrender him in court in discharge of the bail. The court, in denying the motion, said:

"We have no authority in this case to issue a *habeas corpus*. The authority given by the judicial act of 1789, c. 20, § 14, is confined to cases where the party is in custody under color of process, under the authority of the United States, or is committed for trial before some court of the United States, or is necessary to be brought into court to testify. It does not extend to cases where the process is from a state court, and the object is to surrender the party in discharge of bail."

The counsel then moved to discharge the sureties from their recognizance, on the ground that, as it had become impossible to bring the defendant into court without any default on his or their part, they ought not to be sufferers. This motion was also denied, the court remarking:

"There is no sufficient ground for the application. There is no physical or legal impossibility of producing the defendant. The cases cited may be good law, but they proceed on the principle that, by operation of law, the defendant had been discharged of the process, or had been placed beyond the reach of the bail. Nor can it be said that the defendant has been guilty in the present case of no default. His very confinement may have been the result of his own negligence or wrong. The circumstances of the case may furnish reasons for a respite of the recognizance to the next term, and a continuance of the information. How can the court foresee that, at another term, the defendant will be in civil confinement? If the bail were now discharged, and the defendant should ultimately be released from his imprisonment, we have no means to prevent his escape from punishment under the act of congress."

In *Ex parte Robinson*, 6 McLean, 355, 363, Judge McLEAN, in commenting upon the practice adopted in the United States courts to follow the established construction of the local laws as declared by the courts of the states, cited the following cases, as indicating the extent to which United States courts have gone in deferring to the jurisdiction and authority of the state courts. He said:

"Some years ago an individual was indicted for a capital offense in the circuit court of the United States, in which the most learned and able judge STORY presided. The same individual was in prison under state process for debt, or some petty offense. The district attorney for the United States moved the court to issue a *habeas corpus* to bring the defendant before the court, but the learned judge held he had no power to issue the writ for that purpose. A year or two ago a case similar in principle occurred in the circuit court of the United States for Ohio, and that court held it had no power to take the defendant from the state jurisdiction."

Since these last decisions were rendered, the law providing for the writ of *habeas corpus* in the United States courts has been enlarged by legislative amendment, and amplified by judicial construction, but not, it is believed, in such terms as to give to a defendant, who is charged with having violated both the national and state laws, the right to select the jurisdiction in which he will first be tried. Moreover, it may be said, in this case, as was said by the supreme court in the case of *Ex parte Royall*, 117 U. S. 241, 250, 6 Sup. Ct. Rep. 734, that "it is not alleged, and does not appear, that the accused is unable to give security for his appearance in the state court, or that reasonable bail has been denied him, or that his trial will be unnecessarily delayed." When the United States attorney desires the presence of the defendant in this court, the latter may be able to respond in person, or, if he still be detained in prison, he may be surrendered to the United States marshal by the state authorities upon notice that the defendant is required in this court to answer the indictment. If, at that stage of the proceedings, any actual conflict of jurisdiction arises, it will be time enough then to consider what action should be taken to secure a proper enforcement of the law, bearing in mind the declaration of the supreme court of the United States in *Covell* v. *Heyman*, 111 U. S. 176, 182, 4 Sup. Ct. Rep. 355, "that the forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other,

whereby conflicts are avoided by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord, but between the state courts and those of the United States it is something more. It is a principle of right and law, and therefore of necessity. It leaves nothing to discretion or mere convenience." The writ will be discharged, and Fox remanded to the custody of the chief of police of Oakland.