### Ex parte MARRIN.

(District Court, E. D. New York. October 7, 1908.)

1. BAIL (§ 60*)—BOND BY SURETY COMPANY—STATUS.

A bail bond given by a surety company for the appearance of a defendant in a criminal case in a federal court, as authorized by Act Aug. 13, 1894, c. 282, 28 Stat. 279 (U. S. Comp. St. 1901, p. 2315), differs in no way, so far as its legal status is concerned, from the bond of an individual surety.

[Ed. Note.—For other cases, see Bail, Dec. Dig. § 60.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. HABEAS CORPUS (§ 45*)—FEDERAL PRISONER AT LARGE ON BAIL—ARREST BY
   STATE AUTHORITIES—DISCHARGE BY FEDERAL COURT.

    A defendant charged with a criminal offense in a federal court, and at large on bail pending a determination of his case by an appellate court, when arrested and held in custody by the authorities of a state, outside of the jurisdiction of the federal courts in which his case is pending, to answer to an indictment in the state court, is not so held in violation of his constitutional rights or contrary to any law of the United States which entitles him to a discharge by a federal court on a writ of habeas corpus, where neither the United States nor his surety demand such discharge.

    [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 40; Dec. Dig. § 45.*]

Habeas Corpus.

George Young Bauchle, for petitioner.

William P. Allen, Asst. U. S. Atty., John F. Clarke, Dist. Atty., and Peter P. Smith, Asst. Dist. Atty., for respondents.

George L. Naught, for American Surety Company.

    CHATFIELD, District Judge. The present application is based upon a writ of habeas corpus issued out of this court upon the petition of Frank C. Marrin, the person claimed to be imprisoned without warrant of law. The facts of the proceeding are as follows:

    Upon the 3d day of May, 1895, the grand jury of the county of Kings, in the state of New York, found true bills of indictment against Frank C. Marrin upon charges of forgery and grand larceny. These indictments have been pending, undisposed of, until the present time. The record upon this proceeding shows some dispute as to the whereabouts of Marrin from the time of the finding of the above indictments until the year 1907, but nothing that bears upon the present application occurred until Marrin was arrested in Buffalo, N. Y., by the United States authorities, upon an indictment found in the District Court for the Eastern District of Pennsylvania, charging a scheme to defraud under the postal laws of the United States. Upon that charge Marrin was removed to Philadelphia, tried, convicted, and sentenced upon October 3, 1907, to four years' imprisonment, to pay a fine of $5,000, and to pay the costs of the trial. From that sentence an appeal to the United States Circuit Court of Appeals in the Third Circuit has been taken, which appeal is now pending and has progressed to such a point that, on the 15th day of June, 1908, Marrin was released from custody by the United States court in Philadelphia upon a bail bond, running during the pendency of the appeal, in the sum of $10,-000. This bail was furnished by a surety company, and the return to the writ of habeas corpus contains an allegation that the surety company has been indemnified for the amount of this bail bond.

    The charge is suggested that the surety company does not take interest in being able to produce the defendant to the extent that a personal surety might, for the reason that the indemnity held by the company, coupled with the payment of a premium and the reputation acquired through prompt payment of a defaulted bond, render them indifferent to the actual production of the person bailed, in accordance

with the terms of the bond. For the purposes of the present application this, however, would seem to be entirely immaterial. A bail bond given by a surety company is authorized by Act Aug. 13, 1894, c. 282, 28 Stat. 279 (U. S. Comp. St. 1901, p. 2315), has been accepted by the courts frequently since the passage of the law, and differs in no way, so far as its legal status is concerned, from the bond of an individual. The question of motive, unless the issue of good faith is material, has nothing to do with this application.

Upon the 19th day of September, 1908, while Marrin was in the borough of Brooklyn, in the state of New York (and therefore without the boundaries of the Eastern district of Pennsylvania, and beyond the territorial jurisdiction of the United States court and of the Circuit Court of Appeals, in which the case above mentioned was pending), a warrant, based upon the old indictments filed in Kings county in 1895, was obtained from the County Court of the county of Kings, and upon this warrant Marrin was arrested in the city of New York, brought to the county of Kings, and arraigned upon the 1895 indictments. Upon the arraignment and upon the adjourned day the defendant Marrin stood mute, protesting against the jurisdiction of the County Court, and upon the 2d day of October, 1908, obtained this present writ of habeas corpus, addressed to the district attorney of the county of Kings, the warden of the city prison, and the American Surety Company of New York. On the return day the warden of the city prison has produced the petitioner and has filed a return setting forth the commitment of the County Court for the county of Kings, under date of October 2, 1908. The district attorney for the county of Kings joins in this return and sets up the pertinent facts of the record above recited. The American Surety Company appeared in court, by attorney, made no answer to the writ, and disavowed any interest in the matter, except in the obligation imposed upon it by the bail bond furnished in the city of Philadelphia. The application was brought to the attention of the United States through the district attorney of the United States for the Eastern district of New York, the United States was represented in court by an assistant United States attorney for this district, and the statement was entered upon the record that the United States had no motion to make, did not apply for the custody of the said Frank C. Marrin, and cared neither to join in nor oppose the present application.

One further matter must be noted in connection with the facts of the situation. On the 14th day of March, 1907, in the city of Philadelphia, while awaiting trial in the United States District Court for the Eastern District of Pennsylvania, Marrin was released on bail, and thereafter arrested in the city of Philadelphia upon a bench warrant based upon the indictments found in the County Court of Kings county above referred to, with a view to his extradition to the state of New York. Immediately thereafter a writ of habeas corpus was procured out of the United States District Court for the Eastern District of Pennsylvania, and upon the hearing Marrin was discharged. He was thus freed from the arrest on the bench warrant in Philadelphia, but was held by the United States District Court upon his bail bond to await

trial on the indictment then pending in the United States District Court for that district. It will thus be seen that Judge McPherson held a release upon bail in the city of Philadelphia to be equivalent to the custody of the United States court for that district, and that a defendant in custody and awaiting trial could not be taken out of the jurisdiction of the court without the permission of the court itself.

The attention of this court has not been called to any opinion of Judge McPherson, and the record does not show whether he decided that Marrin should be held for trial because the United States District Court had jurisdiction over him and did not relinquish the same, thus compelling the state authorities in Philadelphia to wait until the United States authorities should turn over Marrin to them, or whether Judge McPherson intended to hold that Marrin, while out on bail, was legally in the position of a defendant in the physical custody of the United States marshal and committed in default of bail.

The record of the case as above set forth appears, as has been stated, from the petition, the returns, and an exhibit presented at the hearing. The return of the warden and the district attorney was not traversed, and the petitioner, Marrin, contented himself with arguing upon the face of the record that the County Court of Kings county could not retain jurisdiction of his person and hold him for trial at the present time, but that he must be released and allowed to hold himself in readiness to deliver himself or be delivered by his surety to the District Court of the United States in the Eastern District of Pennsylvania, whenever the surety might desire to surrender him, under the provisions of section 1018 of the Revised Statutes (U. S. Comp. St. 1901, p. 719), or whenever the terms of the bail bond on appeal should be fulfilled and his attendance should be required.

This contention is directly opposed by the district attorney of the county of Kings, who in person and as attorney for the warden has argued the writ on behalf of the respondents. The district attorney contends that while a person is at large on bail no immunity as such exists guaranteeing him freedom from arrest for crime committed prior to the giving of bail or subsequent thereto. The district attorney cites as an illustration of his argument the following proposition: Suppose a man were arrested in New Jersey for a so-called technical violation of the internal revenue laws of the United States, and held by the United States court for trial in the sum of $250 bail, and should put up cash bail therefor. Suppose, then, that this person should cross into New York and commit murder, or some other unbailable offense, and upon his arrest should claim, upon application for a writ of habeas corpus, that he must be released in order to be present in New Jersey, inasmuch as he was theoretically in the custody, at the time of committing the murder, of the United States authorities in the state of New Jersey. The circumstances of the present application make it unnecessary to consider the discretion which undoubtedly exists in the courts of the various states with respect to allowing a man to be tried for a second offense while awaiting trial, or even while under sentence, upon an earlier charge.

The argument of the petitioner, Marrin, arises from the older idea of bail and the right of the surety to coerce or compel the presence of his

principal in order to carry out the terms of the bond. Bail, in many instances, provides merely for the release of the individual, in order that he may go at large within certain bail limits, and thus the bail limit is but an extension of the boundaries of the jail. The defendant is thus confined or detained within an enlarged jail. But in a bail bond such as the one at present under discussion no limit is imposed. The only condition is that the defendant appear at the time appointed, and the tendency for a number of years has been to treat such a bail bond as a contract, rather than purely as a fictionary wall, outside of which the court could not recognize the identity of the prisoner, except as a fugitive or escaped prisoner.

Jurisdiction to grant a writ of habeas corpus is given by section 751 of the Revised Statutes (U. S. Comp. St. 1901, p. 592), and section 753 is as follows:

"The writ of habeas corpus shall in no case extend to a prisoner in jail, unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof, or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof, or is in custody in violation of the Constitution or of a law or treaty of the United States," etc. U. S. Comp. St. 1901, p. 592.

It might be questioned whether the present application is within the strict interpretation of the words just quoted, and for that reason this court might, in the first instance, have taken under advisement the question of authority to issue this writ. But, as has been said in the case of In re Fox (D. C.) 51 Fed. 430, while the imprisonment set forth is not claimed to be in violation of any particular statute law of the United States, it is claimed to be in violation of the laws of procedure, and of the laws fixing jurisdiction in the United States courts themselves. Such an interpretation of section 753 has been approved in the case of In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55.

The authority of the United States courts to release a defendant from the custody of the state authorities, if his case is covered by the statutes, is plainly set forth in United States v. Booth, 62 U. S. 506, 16 L. Ed. 169, and was also recognized in the case of United States v. French, 1 Gall. 1, Fed. Cas. No. 15,165. But the granting of a writ of habeas corpus and the hearing of the application does not carry with it necessarily the discharge of the defendant from the imprisonment complained of.

A number of considerations present themselves which need only be stated. The liability of the surety on the bond, or the insufficiency of any excuse for non-performance, if the surety cannot return Marrin to the United States court in Philadelphia because of his detention here, is discussed in the case of Taylor v. Taintor, 83 U. S. 366, 21 L. Ed. 287. In the Matter of Beavers (C. C.) 131 Fed. 366, the right of the United States to forego or delay the prosecution of a pending charge in a particular district, and to take up a case in some other district and remove the defendant there for trial, was sustained upon the ground that the United States had jurisdiction over both matters, and in its discretion, when approved by the discretion of the court, had

the right to determine to which case the administration of justice re-- quired should be given priority.

It has also become well settled that if a party is on trial or in duress, —that is, in actual custody—under the authority of a state court, no other state court, and no United States court, should, except in an urgent case, take the defendant from that custody, prior to an actual release or relinquishment of the right to the custody on the part of the court before which the matter is pending. Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868; Ex parte Fonda, 117 U. S. 516, 6 Sup. Ct. 848, 29 L. Ed. 994; Cook v. Hart, 146 U. S. 183, 13 Sup. Ct. 40, 36 L. Ed. 934.

Nor are we concerned here with the merits of the indictments or charges. The guilt or innocence of the accused in either jurisdiction has no bearing upon the question. In re Roberts (D. C.) 24 Fed. 132. There are but three parties whose rights are to be considered in determining the questions: First, can the surety complain if this court does not treat the defendant, Marrin, as if in actual physical custody of the United States marshal for the eastern district of Pennsylvania, and as if he had temporarily escaped therefrom; his presence in Philadelphia and his rearrest being desired by the authorities there? Second, do the United States authorities in Philadelphia demand, and do the ends of justice require, an unbroken prosecution of the case in that district, and the actual attendance of the defendant, even though he has been released on bail pending the appeal, which has caused a long interval during which his attendance in court was unnecessary? And, third, if neither the surety nor the United States authorities have the right to nor do demand, for the ends of justice, the presence of the defendant in custody in Philadelphia, can the defendant in effect elect not to be prosecuted, or even not to be arrested, for any cause whatever, so long as his bail bond returnable to the court in Philadelphia is outstanding?

The first of these questions has been substantially answered in the reference to the case of Taylor v. Taintor, supra, but it is the language of the court in the case of Taylor v. Taintor upon which the defendant principally bases his contention.

The second proposition has been partially answered in the reference to the Beavers Case, supra. But the present case differs from that in this respect: That here the United States is not waiving the right to trial in one district for the sake of trial in another, but is standing mute and waiving its right to the presence of the defendant, with the knowledge that he may be tried in the courts of the state of New York. There would seem to be no difference. If the United States authorities, through the Department of Justice, relinquish the actual custody of a defendant, and he should be tried and sentenced somewhere else, the cases above cited would show that the jurisdiction of the state court, if it properly attached, should be respected, and the United States could not be heard to complain that its procedure had been interfered with. The effect upon a bail bond has been above referred to, but does not alter the position of the principal.

The third proposition, based upon the apparent language in the case

of Taylor v. Taintor, supra, is on all fours with the contention in the case of In re Fox (D. C.) 51 Fed. 427. In that case, as in the present, the United States court saw fit to issue a writ of habeas corpus and to determine the question upon the return of that writ. The Fox Case, however, arose in the same district of the United States court in which he had been held on bail for trial, the same attorney had acted as the representative of the United States in the conduct of the case in which bail had been received as appeared upon the application for a hearing upon the writ of habeas corpus, and this United States attorney made no effort to resist or to terminate the taking of the defendant in that case away from the jurisdiction of the United States court. In other respects the Fox Case seems to be entirely similar to the one at bar, and, as said in the Beavers Case, supra, the authority of the United States exists throughout the entire country. The desire of the Department of Justice to prosecute a case can be manifested and insisted upon in one jurisdiction as in another. The authority of the United States, so far as appearance in court is concerned, rests upon the United States attorney for the particular district.

Judge McPherson, in the habeas corpus proceedings in Philadelphia, exercised his discretion and apparently acted upon the demand of the United States that the authority of the United States District Court in that district be not relinquished. But this is entirely different from the question now raised. In the present application no motion is made by the United States. The physical custody of the defendant has been given up, and a contract on the part of the defendant to appear, and on the part of his surety to produce him, at a certain time, has been accepted, with the approval of the United States court in the Pennsylvania district. No rights would seem to be violated by the exercise of the jurisdiction which the state courts of Kings county have exercised over the subject-matter of the case and over the person of the defendant, and all questions which may arise in Philadelphia, in the event of a trial in Kings county, and sentence (if conviction should result), can then be satisfactorily disposed of.

If the presence of the defendant in Philadelphia were demanded by the United States, and if the ends of justice seemed so to require, it is believed that this court, in the exercise of its discretion, could enforce the jurisdiction of the United States District Court for the Eastern District of Pennsylvania, and compel the return of the defendant for such further proceedings as might there be proper; but under the existing conditions of the case the exercise of this discretion is unnecessary, and the defendant or petitioner is not entitled to ask as a right what does not seem to be proper as a matter even of discretion.

Frank C. Marrin, therefore, does not seem to be held contrary to any law of the United States, nor in violation of any of his constitutional rights, and the writ of habeas corpus must be dismissed, and the defendant returned to the warden of the city prison, in the Borough of Brooklyn, to be held under the commitment of the County Court of Kings county.