## UNITED STATES v. MARRIN.

(District Court, E. D. Pennsylvania.   October 22, 1915.)

### Nos. 44–46.

1. COURTS ⬤═⇒495—PRIORITY OF JURISDICTION—FEDERAL AND STATE COURTS—COMITY.

That a person is under sentence of imprisonment in the state of New York, but has been paroled within the state, under the state statute by which he is still subject to imprisonment for the remainder of his term for violation of his parole, does not exempt him from being arrested and taken to another state to serve a sentence imposed on him by a federal court there, where no objection is made by the court or authorities of New York; the question of priority of jurisdiction being one of comity, and not one of personal right in the defendant.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1376–1385; Dec. Dig. ⬤═⇒495.]

2. CRIMINAL LAW ⬤═⇒999—COMMITMENT—LOSS OF JURISDICTION AFTER SENTENCE—INTERVENING IMPRISONMENT.

That a defendant, after conviction and sentence to imprisonment for a criminal offense, but before commitment, is also convicted and sentenced for a different offense in another jurisdiction, and is thereunder imprisoned for a time longer than the term imposed by his first sentence, is not a legal bar to the issuance of a warrant of commitment under the latter, when he is again brought within the jurisdiction.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2550–2553; Dec. Dig. ⬤═⇒999.]

3. COURTS ⬤═⇒475—"COMITY."

"Comity" is a doctrine founded in necessity, meaning the rule under which one authority gives way to another, and has no application where what is done by one court is with concurrence of the other. It answers, with courts and cabinets, in law and diplomacy, substantially the same purpose which personal courtesies serve in the social relations. One principle is that the court which first asserts jurisdiction may continue its assertion without interference from the other.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1229, 1231–1239, 1247–1259; Dec. Dig. ⬤═⇒475.

For other definitions, see Words and Phrases, First and Second Series, Comity.]

Criminal prosecution by the United States against Frank C. Marrin. On petition for writ of habeas corpus and application for order of commitment. Writ denied, and warrant of commitment granted.

John H. Hall, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa.

John G. Kaufman and V. Gilpin Robinson, both of Philadelphia, Pa., for defendant.

---

DICKINSON, District Judge. An outline statement of a few facts will be helpful to enable us to understand in what way the questions discussed in this case arise, and to follow the course which the discussion has taken:

Frank C. Marrin, the defendant, was convicted in this court on October 5, 1907, and on March 18, 1908, was sentenced to the payment of a fine and four years' imprisonment. He took an appeal from the judgment of conviction, and was admitted to bail pending its disposition. The appeal was unsuccessful, and on March 10, 1909, a mandate came down from the Circuit Court of Appeals affirming the judgment of conviction, and remanding the record of the case to this court to have the sentence carried into execution. The defendant failed to appear, and his bail failed to produce him. In consequence his recognizance was forfeited. This forfeiture the court refused to remit. United States v. Marrin (D. C.) 170 Fed. 476. On September 10, 1915, he was found in the state of New York and was taken into custody, and by order of the United States District Court for the Northern District of New York was remanded to this jurisdiction, and is now in the custody of the United States marshal here. The authority of the marshal for holding him is implied in the part of the record of the case above quoted.

This court was then asked to issue the usual order of commitment. This is asked for on the basis of the defendant being a fugitive from justice following a forfeiture of his recognizance to appear here to submit himself to commitment to have the sentence imposed carried into execution. This application is met by a petition for a writ of habeas corpus. This petition in its turn is based upon the following state of facts:

There is a denial of the fact that the defendant has absconded. Before his indictment for the offense of which he was here convicted, the defendant had been indicted in a state court of Kings county, N. Y., for an offense alleged to have been previously committed against the laws of the state of New York. For this he had not at that time been tried. Pending the decision of the appeal above referred to, and while within the jurisdiction of this court, he was arrested by the New York state authorities, with a view to have him sent to Kings county, N. Y., for trial under the indictment there found against him. He thereupon made application to this court for a writ of habeas corpus on the ground that, being in the custody of this court, through the bail entered by him, this court should not permit him to be taken out of its custody into another jurisdiction. The writ was allowed, and the defendant relieved of this arrest and remanded to the custody of his bail.

With matters in this situation, the defendant voluntarily, and presumably with the consent of his bail, expressed or implied, left this jurisdiction and went into the state of New York. He was there again taken into custody by the New York state authorities with a view to his trial under the indictment above mentioned, found against him in Kings county. He made application for his discharge from that arrest on the plea that he was subject to the control of this court

and of the Circuit Court of Appeals of this circuit until his appeal should have been finally disposed of and the sentence of this court reversed or carried into effect. In this application he was unsuccessful. The ruling appears to have been based upon the ground that the question of to which court he should be answerable was a question, not of the right of the defendant, but of comity in the exercise of the powers of the court of each of these respective jurisdictions. The court therefore declined to order his release unless either the authorities of the United States or the bail should intervene to ask it. Both the United States authorities and the bail refused to interfere, or at least stood mute and did not interpose in the proceedings. The opinion of Judge Chatfield accompanying this ruling is reported in 164 Fed. 631.

Marrin was accordingly tried, convicted, and the conviction on appeal affirmed, and he was sentenced to an indeterminate term of from 15 to 20 years in the proper prison of the state of New York. Another effort to be relieved of imprisonment in the state of New York was made by the defendant. This was in the form of an application to transfer the custody of defendant to this court. This was refused; the opinion of Judge Gavegan planting the refusal on the ground of lack of power. People v. Benham, 71 Misc. Rep. 345, 128 N. Y. Supp. 610.

It may be well to make clear by explicit statement, what is implied in the foregoing, that the two offenses to which we have referred were in every sense distinct and separate, and there is no connection in any way between the two. Following the conviction last referred to Marrin was committed in pursuance of the sentence then imposed, and remained in prison for a period of nearly 7 years.

By the provisions of the New York statutes certain convicts become entitled to what is the practical equivalent of a commutation of sentence through and by the parole system which is in vogue in that state. Marrin was made the recipient of the benefits of this parole provision of the statute. He was also given the benefit of the exercise of executive clemency. The precise form in which this benefit was conferred is argued to be of importance here, and so far as of importance to this discussion will be referred to later.

It should be interpolated at this point that the authorities of the United States, while not intervening to interfere with either the trial, sentence, or the carrying out of the sentence of the New York state court after the commitment of the defendant under that sentence, lodged with the authorities of the prison in which he was incarcerated the usual detainer for the purpose of holding him to answer to his sentence here. Upon release of Marrin from actual detention within his prison walls, the authorities of the United States claimed the detainer to have come into operation and took him into custody.

The defendant again had recourse to habeas corpus proceedings, in which he raised the question of the legality of his arrest. He raised also substantially the same question by opposition to the application to have him sent into this jurisdiction. The result of these several efforts is shown by the fact of his presence here under an order of removal.

In his present application he re-raises the same questions and reasserts his position. To fully present them, it is necessary to include a statement of the provisions of the New York Code on the subject of parole. All of them need not be quoted, as one may be taken as typical of all. That is the provision that a condition of the parole is that the paroled convict shall not go outside of the territorial limits of the state of New York, and shall, at stated times, report to the New York state prison authorities, and that these reports shall be viséd by the person in whose custody the order of parole has placed the convict. This very practical predicament is presented. The sentence of the New York state court may result in an imprisonment for 20 years. Although released upon parole, if the condition referred to is violated, the relator may incur as a consequence 13 years additional servitude.

[1] The questions presented by him through this application, and earnestly and forcibly urged by his counsel, are in substance and effect two . We will invert the order of their presentation. One is that in legal effect and intendment Marrin is still in the custody of the New York state authorities, or, as the point made may for emphasis be put, he is still in a New York prison. The proposition presented is that to take him away from the New York authorities and to bring him here is in legal intendment and effect the same as if he were taken while within the walls of the New York state prison there serving the sentence imposed upon him. The point made is that, while as a physical fact he has been brought within this jurisdiction, the whole process by which he was brought was unwarranted and illegal, and that this court should therefore refuse to further detain him, but should remand him to the custody of the authorities of the state of New York, from whose custody he was thus unlawfully taken.

The other proposition presented is that there is no authority of law to commit Marrin to prison here, other than the authority of his original sentence, and, as the time limit of that sentence has already long since expired, there is no lawful authority to detain him further; or to present the same thought in another form, the operation of the two sentences imposed was concurrent, and the sentence here imposed ran itself out during the running of the other.

It is too clear for the necessity of the citation of supporting authorities that any court has the power to assert its jurisdiction and in the legal sense preserve its dignity by preventing the interference of any other authority with the work which that court had in hand to do. In the enforcement of this principle courts will relieve from arrest, and even from the service of civil process, parties or witnesses who are in attendance upon the business of the court. In recognition of the same principle no court will direct the service of its process upon persons who are thus in attendance upon another court. These propositions are stated, not because they are in dispute here, but merely for the purpose of securing a starting point from which the discussion may proceed.

[3] Beginning, therefore, with the principle above adverted to, the question, which in its application to the facts of this case would seem to be the controlling one, is whether the principle is one which may be

invoked by the individual concerned as a right belonging to him, or whether the principle, when applied by a court, follows the doctrine of comity. We have said this was probably controlling, because it would seem to follow that the doctrine of comity could have no application where what had been done was with the concurrence of both courts of the conflicting jurisdictions. The whole doctrine of comity arises out of necessity. If a person be answerable to two different jurisdictions for offenses against the laws of each, it is a physical fact that he cannot be, at the same time, in the separate control of each. It is therefore necessary that one give way to the other for the time being. It is convenient and desirable that there be a rule by which it can be determined which authority shall make way for the other. This rule is that known as the rule of comity. It answers with courts and cabinets, in law and in diplomacy, substantially the same purpose which personal courtesies serve in the social relations of life. One of the principles is that the court which first asserted jurisdiction may continue its assertion without interference from the other.

The position of the United States here is that the doctrine is applied wholly and solely out of the deference paid by one court to another, and if that court which under the rule mentioned would be accorded full and free sway for the assertion of its power yields to the exercise of the jurisdiction of the other court, no right of the individual defendant concerned is involved. In other words, the court which has the possession of the person of a defendant who is also subject to the control of another court will exercise its power in accordance with a discretion which is governed in its exercise by the rule of comity, to which reference has been made. This is the principle which has been heretofore applied in the case of the present defendant, and which has sufficient supporting authority in Mahon v. Justice, 127 U. S. 700, 8 Sup. Ct. 1204, 32 L. Ed. 283.

There is no reason supplied by the facts of this case to induce this court to decline to have its sentence carried into effect out of regard to any spirit of comity, because it clearly appears that the courts of the other jurisdiction to which this comity would be due have neither asked for nor expected its extension. This conclusion is consistent with the rulings to which we have been referred by counsel for the relator, of which In re Jones may be taken as typical. There it is true that the court released the relator, but it was done because the court thought the case was a proper one for the application of the quoted principle. Had the facts of that case been the facts of this case, the court might have reached a different conclusion in accordance with the principle upon which that case was ruled.

[2] This brings us to the second position of the relator. It is in effect that, Marrin having been convicted and sentenced by this court, and before undergoing imprisonment under that sentence having been sentenced by the court of Kings county, N. Y., and having served that sentence, he has in intendment of law served the sentence here imposed; the term of the first sentence as originally imposed having now expired.

As authority in support of this contention we are referred to the case of In re Jennings (C. C.) 118 Fed. 479. We are constrained to

find that the principle upon which the Jennings Case was ruled falls short of supporting the position of the present defendant. In that case the defendant had been sentenced, and a warrant of commitment had issued, the command of which was that the marshal should take charge of the prisoner, who was to be kept in the United States prison maintained at Ft. Leavenworth. In disregard of his duty and the command of the writ, the marshal, of his own accord and utterly without any authority so to do, turned the custody of the defendant over to another jurisdiction. The defendant was taken into that jurisdiction, convicted, and sentenced, and committed to jail to serve out the term of his imprisoment. Subsequently, and after the expiration of the term of his original sentence and that mentioned in the warrant of commitment, he was again taken into custody by the marshal, to whose custody he had been committed, who undertook to hold him for a further term of imprisonment measured by the original sentence. The defendant sued out a writ of habeas corpus. The return showed that the only authority for the deprivation of his liberty was a warrant of commitment, the authority of which had already expired by its own terms. On the face of the pleadings, therefore, there was absolutely no authority for the retention of the prisoner, and he was in consequence discharged.

A reference to the practice and the technical forms of procedure in such cases will bring out clearly the principle which the court applied in the Jennings Case, and which is applicable here. A formal statement of the whole situation involves the fact of first a conviction and then a sentence. What follows is in the nature of execution process. When a prisoner is brought to the keeper of the jail, the prison authorities, before they can receive him, must have some authority for so doing. This is practically supplied in the form of a warrant of commitment, which directs them to receive the prisoner and to hold him for a given length of time. A case may arise, and frequently does, in which the time mentioned in the original sentence has expired before any commitment issues authorizing the prison authorities to receive the prisoner. A man, for instance, may be convicted and sentenced. From this judgment he may take an appeal, and the appeal may not be disposed of until after the term of the sentence has expired. If a warrant of commitment authorized the jailer only to hold the prisoner in accordance with the language of the original sentence, that term would already have expired when the commitment was received.

There may also be the case of a man who has been convicted and sentenced, and who evades the authorities until after the time of his original sentence has elapsed. He may then be apprehended or surrender himself. If the instructions in the warrant of commitment followed the language of the original sentence, and authorized the jailer only to hold him during the term for which originally sentenced, it would obviously confer no authority to hold him at all. Out of this as a necessary consequence has come the practice of issuing warrants of commitment in accordance with the facts, and hence also the application for a warrant here. In the Jennings Case, as the authority in the warrant of commitment which the marshal held had expired, he was without the possession of authority to hold the prisoner, and the

prisoner must be discharged, unless there was authority to hold him. The only authority which could be secured was by an application to the court for a warrant to commit the prisoner to serve the term of imprisonment which he had not served. It was, of course, within the power of the court to either grant or withhold such authority, and really what the Jennings Case rules is that, when the court has given such authority to the marshal, and he, without the sanction of the court, refuses to act upon it, and without warrant of law turns the custody of the prisoner over to somebody else, the court under such circumstances will refuse to find as a fact that the prisoner has not served his sentence, but will assume that he has served it, and will in consequence refuse authority for his further imprisonment. If in that case the fact had been that the prisoner on the way to jail had escaped, and had eluded the officers until after the term of his imprisonment had expired, and the court had been then asked for authority for his commitment, it would, without doubt, have been granted, and the fact that the prisoner had spent the intermediate time in a jail in another jurisdiction would not in any way affect the question.

The whole question, therefore, resolves itself into one of the propriety of the court now issuing an order of commitment against the defendant to serve the sentence, no part of which has been served. The United States, as already stated, asks for this on the ground that the defendant is an absconder. The defendant opposes it upon the ground that he is not an absconder, but that he failed to surrender himself because of his inability to do so, and that this inability resulted from two things. One was his arrest by the New York state authorities, and the other was the acquiescence of the United States authorities in his detention there. Practically the position taken is that, inasmuch as the United States authorities might have had control of the defendant 7 years ago, and might then have had him committed to serve his sentence, and inasmuch as they voluntarily did not do it then, the court ought not now to commit him to jail; the time of his original sentence having expired. This plea is enforced by a strong and moving appeal on the ground that the man has already served an imprisonment of 7 years, that by good conduct and the confidence of the New York state authorities that he will comply with the conditions of his parole he has been restored to a conditional liberty, and that the effect of his commitment here will be to make him unable to comply with the condition of his parole, and will in consequence subject him to the possibility of a further imprisonment of perhaps 13 years.

There is also implied the presence of this situation. The defendant was under bail. The New York arrest prevented him from surrendering himself. The United States had the option of asking for his return to this jurisdiction or of forfeiting his recognizance. They voluntarily and deliberately chose the latter, and ought not now to return to the former. The appeal here is to the ethical standards by which the executive should be controlled. We can pass only upon the legal rights of the defendant.

We can see no escape from the conclusion that defendant's appeal is properly made to those authorities which have the extension of clem-

ency within their powers, and that this court is now concerned only with the two questions of law which have been raised, and as to them the conclusions are, first, that the defendant as a fact has not served the sentence imposed upon him, or any part of it; and, second, that he, being now within and subject to the jurisdiction of this court, may be committed to serve the sentence imposed upon him without the violation of any right flowing from the fact that he is also under and serving a sentence imposed upon him by another court. The statement of these conclusions disposes, so far as this court is concerned, of the questions raised and discussed.

The order of commitment applied for is allowed. As no valid grounds for the discharge of the prisoner are disclosed in his petition for a writ of habeas corpus, the writ might be refused; but, as counsel may prefer to have the formal record show a remanding of the prisoner, the writ may be allowed, and the answer to the petition filed as a return to the writ, and a formal order made that the discharge of the prisoner is refused, and that he be remanded to the custody of the marshal, to have the order of commitment now made complied with.

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes